J-A11029-24

J-A11030-24

2024 PA Super 229

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY SCOTT PERSON | : | |
| | : | |
| Appellant | : | No. 1249 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 16, 2023
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000323-2021

_____

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY SCOTT PERSON | : | |
| | : | No. 1250 MDA 2023 |

Appeal from Order Entered August 2, 2023
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000323-2021

BEFORE: BOWES, J., STABILE, J., and MURRAY, J.

OPINION BY STABILE, J.: **FILED OCTOBER 01, 2024**

These cross-appeals, which we consolidate for disposition pursuant to
Pa.R.A.P. 513, include (1) an appeal by Gregory Scott Person from his
judgment of sentence for corruption of minors and interference with custody

of children,[1] and (2) an appeal by the Commonwealth from an order granting Person's[2] post-sentence motion for judgment of acquittal on the charge of unlawful contact with minor — obscene and other sexual materials. We affirm both the judgment of sentence and the order granting judgment of acquittal.

The record reflects that in June 2021, Appellant, a fifty-year-old man, contacted the victim, a thirteen-year-old girl, through Facebook Messenger and requested her to wear pantyhose without underwear for one day every week and then give the pantyhose to Appellant.[3] Appellant promised to supply the victim with money and tobacco products.

On June 16, 2021, Appellant met the victim at her residence. He then drove the victim to a retail store in his car, purchased tobacco products for her, and drove her home. The entire episode took about 22 minutes.

The victim's mother discovered a vape pen that Appellant purchased for the victim, at which point the victim told her mother about her interactions

_____

[1] This Court's prothonotary initially captioned this appeal as being taken from the "judgment of sentence entered August 2, 2023." We have amended the caption to state the correct date of sentence, May 16, 2023.

[2] Although Person is the appellee in the Commonwealth's appeal, we will refer to him throughout this memorandum as "Appellant" for the sake of consistency.

[3] The Commonwealth also alleged that Appellant requested the victim to provide photos of her in pantyhose without underwear. A state trooper testified during trial, however, that Appellant did not request photos. N.T., 10/18/22, at 149-53. Near the conclusion of trial, the Commonwealth admitted that it had no such photos, and the allegation was stricken from the charges. *Id.* at 165-66.

with Appellant. The victim's mother contacted the police to report Appellant's conduct toward the child.

Appellant was charged with the offenses referenced above, as well as the summary offense of sale of tobacco to a minor. Following a preliminary hearing in which the charges were held for court, Appellant filed a motion for writ of habeas corpus alleging that the Commonwealth lacked sufficient evidence to substantiate the charges. The trial court denied the motion but advised that Appellant could move for judgment of acquittal at a later point.

At the close of evidence during trial, Appellant moved for judgment of acquittal, and the trial court denied the motion. The jury found Appellant guilty of corruption of minors, interference with custody of children, and unlawful contact with a minor.[4] On May 16, 2023, the trial court determined that Appellant was an SVP and sentenced him to an aggregate prison term of five to nineteen years, followed by three years of probation.

Appellant filed timely post-sentence motions challenging the sufficiency of the evidence. In an opinion and order dated August 2, 2023, the trial court held that the evidence was sufficient to sustain Appellant's convictions for corruption of minors and interference with custody of children but was insufficient to sustain his conviction for unlawful contact with a minor. The trial court vacated the latter conviction, along with the sentence as to that

---

[4] The trial court, sitting without a jury, found Appellant guilty of selling tobacco to a minor. This conviction is not at issue in these appeals.

count. The trial court further ordered that "in all other aspects, [Appellant's] sentence shall remain in full force and effect." Order, 8/2/23.

On September 1, 2023, Appellant timely filed a notice of appeal as to his judgment of sentence. On September 8, 2023, the Commonwealth cross-appealed the portion of the August 2, 2023, order granting judgment of acquittal on the unlawful contact charge.

Appellant raises three issues in his appeal:

1. Was [the] evidence insufficient to convict, as the subject Facebook messages in Count One were not obscene, were actually jokes and were protected free speech and the purported interference in Count Three was too brief to support conviction?

2. Was the conviction against the weight of the evidence where the subject Facebook messages in Count One were not obscene, were actually jokes and were protected free speech and the purported interference in Count Three was too brief to support conviction?

3. Was Appellant's designation as an SVP erroneous as the Commonwealth's expert erroneously recalled a report date, report source, video evidence, number of messages and prior record of Appellant?

Appellant's Brief at 8 (appeal at docket number 1249 MDA 2023).

The Commonwealth raises a single issue in its cross-appeal:

Whether the trial court committed an error of law/abuse of discretion in granting [Appellant's] Motion for Post-Trial Relief concerning the sufficiency of evidence in his conviction on Count 2: Unlawful Contact with a Minor, overturning the jury verdict of guilty on said count, despite the trial court already weighing the sufficiency of the evidence denying [Appellant's] pre-trial *Habeas Corpus* Petition and denying [Appellant's] Motion for Judgment of Acquittal after the close of [the] Commonwealth['s] evidence?

J-A11029-24

J-A11030-24

Commonwealth's Brief, at 7 (appeal at docket number 1250 MDA 2023).

Appellant argues in a single question that the evidence was insufficient to sustain his convictions for corruption of minors (18 Pa.C.S.A. § 6301(a)(1)(i)) and interference with custody of children (18 Pa.C.S.A. § 2904(a)).[5] We disagree.

The standard we apply in reviewing the sufficiency of the evidence is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brockman***, 167 A.3d 29, 38 (Pa. Super. 2017).

The statutory offense of corruption of minors provides in relevant part:

_____

[5] Appellant purports to raise three sufficiency challenges in a single question in his brief. ***See*** Appellant's Brief at p.12-15. We remind counsel that our appellate rules require that the argument section of a brief is to be divided into as many parts as there are questions to be argued. ***See*** Pa.R.A.P 2119.

- 5 -

> (1)(i) Except as provided in subparagraph (ii),[6] whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(1)(i). "Actions that tend to corrupt the morals of a minor are those that would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." **Commonwealth v. Sebolka**, 205 A.3d 329, 339 (Pa. Super. 2019).

Appellant first challenges the evidentiary sufficiency of his conviction for corruption of minors on the ground that the Commonwealth failed to demonstrate that his Facebook messages to the victim were obscene. Obscenity, however, is not an element of the crime of corruption of minors. **See** 18 Pa.C.S.A. § 6301(a)(1)(i). Nor does this Court define the statutory element - "tends to corrupt the morals of a minor" - to require proof of obscenity. **Sebolka**, **supra**. Thus, whether the Facebook messages were obscene is irrelevant as to the sufficiency of the evidence of guilt, and no relief is due on that ground.

Appellant next argues that his dialogue is protected under the First and 14th Amendments to the U.S. Constitution, as well as Article One, Section Seven of the Pennsylvania Constitution. The totality of Appellant's argument

---

[6] Subparagraph (ii) upgrades the offense to a third-degree felony under certain circumstances. 18 Pa.C.S.A. § 6301(a)(1)(ii). Appellant was not found guilty under this subparagraph.

in support of these multiple constitutional challenges is that "[t]he Commonwealth pursued prosecution because of a topic that was joked about in a message. But the Commonwealth cannot proscribe speech because it does not like the ideas expressed or because the ideas are unpopular. *Commonwealth v. Knox,* 190 A.3d 1146, 1154 (Pa. 2018)." Appellant's Brief at 13-14. We need not elaborate as to why the whole of this argument is woefully insufficient to permit appellate review, as the deficiencies are self-evident. *See Commonwealth v. McLaurin,* 45 A.3d 1131 (Pa. Super. 2012) ("As Appellant has cited no legal authorities nor developed any meaningful analysis, we find this issue waived for lack of development."). These arguments are waived.

Similarly, Appellant challenges the constitutionality of Section 6301(a)(1)(i) of the corruption of minors statute upon the basis that the phrase "any act which corrupts or tends to corrupt the moral of a minor," is vague and indefinite. Like his previous challenge, the argument presented is woefully undeveloped and is limited to the following: "It is vague and indefinite. Police and prosecutors have unbridled discretion to pursue what they personally believe triggers the statute. Additionally, that which 'corrupts or tends to corrupt' lends itself to harsh and discriminatory enforcement based on personal predilections of the Commonwealth. *Commonwealth v. Morgan,* 331 A.2d 444, 445 (Pa. 1975)." Appellant's Brief at 14. We could deem this claim waived as well, but choose not to do so, since this issue

already has been decided in **Commonwealth v. Randall**, 133 A.2d 276 (Pa.

Super. 1957).

At the outset, we observe that when considering whether a statute is unconstitutionally vague it first must be determined whether the challenge is a facial challenge or only one as applied to the defendant's conduct:

> ... [W]e note that vagueness challenges may be of two types. First, a challenge of facial vagueness asserts that the statute in question is vague when measured against any conduct which the statute arguably embraces. Second, a claim that a statute is vague as applied contends the law is vague with regard to the particular conduct of the individual challenging the statute.
>
> For a court to entertain challenges of facial vagueness, the claims must involve First Amendment issues. When a case does not implicate First Amendment matters, vagueness challenges are to be evaluated in light of the facts at hand — that is, the statute is to be reviewed as applied to the defendant's particular conduct.

**Commonwealth v. Habay,** 934 A.2d 732, 738 (Pa. Super. 2007). As Appellant does not attempt to argue this challenge as applied to the specific conduct that formed the basis for his conviction for corruption of minors, we consider that the challenge is a facial one. On that basis, Appellant is not entitled to any relief, since, as we stated, the issue already has been decided.

*Randall* held that virtually identical language in the predecessor statute

to Section 6301[7] was not void for vagueness:

> The comprehensive words of the statute, 'whoever, being of the age of twenty-one years and upwards, by any act corrupts or tends to corrupt the morals of any child under the age of eighteen years' certainly convey concrete impressions to the ordinary person. The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.
>
> It is obvious that the mandates of the statute are salutary measures designed to protect children. 'The ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency.' The general language of the statute, therefore, is not a valid objection to it on constitutional grounds. Unless words of such seeming generality as 'moral' and 'immoral' were valid in statutes, government itself would become impossible. Manifestly, there can be no objection to the use, in a statute, of words like 'corrupt the morals' or 'tends to corrupt the morals of any child,' which include many things, all of which are intended by the legislature to be covered; otherwise, there would be barred from statutory use such customary verbiage as 'fraudulent,' 'due,' 'negligent,' 'arbitrary,' 'reasonable,' etc.

---

[7] When we issued *Randall*, the corruption of minors statute was codified at 18 P.S. § 4532. **Compare** 18 P.S. § 4532 ("Whoever, being of the age of twenty-one years and upwards, by any act corrupts or tends to corrupt the morals of any child under the age of eighteen years . . . is guilty of a misdemeanor") **with** 18 Pa.C.S.A. § 6301(a)(1)(i) ("Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age . . . commits a misdemeanor of the first degree").

> It is not a valid criticism that such general moral standards may vary slightly from generation to generation. Such variations are inevitable and do not affect the application of the principle at a particular period in time. The highest court in the land has recognized that the 'use of common experience as a glossary is necessary to meet the practical demands of legislation' and that the 'requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.'
>
> The constitutionality of similar statutes defining crimes in general terms has been upheld by many courts where the general terms used in the particular statute get precision from common standards of morality prevalent in the community.
>
> The validity of statutes making it a crime to contribute to the delinquency of minors has been upheld in our own State and other jurisdictions.
>
> The term 'moral turpitude' has been held adequate to satisfy even the strict rule applicable to criminal statutes. The term 'good moral character' as used in the immigration and nationality laws has frequently been applied by the courts. The measure applied is the 'common standard of morality' prevalent in the community or the 'common conscience' of the community.
>
> We are convinced that the statute here involved was couched in language sufficiently clear and definite to proscribe the conduct of defendant Randall.

*Id.,* 133 A.2d at 280–81 (citations omitted).

*Randall* continues to remain good law today because there is no material difference between the operative language in the statute examined in that case and the statute presently in force. *See* n.7, *supra*; *see also Commonwealth v. Lawrence*, 2020 WL 996930, *3 (Pa. Super. filed Mar. 2, 2020) (unpublished memorandum) (relying in part on *Randall* in upholding

constitutionality of the statute post-amendment).[8]  Thus, we follow *Randall*

and conclude that Appellant's facial challenge to Section 6301(a)(1)(i) lacks

merit.

Alternatively, even if we consider Appellant's challenge to be on an as-

applied basis, Appellant is not entitled to relief, because the statute is not

unconstitutionally vague.  Appellant, a fifty-year old man who was over three

times the victim's age (thirteen), initiated contact with her through Facebook

Messenger and asked her to wear pantyhose without underwear for one day

every week and then give the pantyhose to Appellant in return for money and

tobacco products.  Appellant then met the victim at her residence and drove

her to a store to buy her tobacco products.  Although Appellant claims that

the victim understood that his request for her pantyhose was a "joke,"

Appellant's Brief at 13, an ordinary person would understand that a

relationship with obvious sexual overtones between a middle-aged man and a

thirteen-year-old girl constitutes conduct that an ordinary person would

understand to be offensive to community standards of decency, propriety and

morality.  Appellant's claim fails.

Appellant next challenges the sufficiency of the evidence underlying his

conviction for interference with custody of children under 18 Pa.C.S.A. § 2904.

Section 2904 provides in relevant part, "[a] person commits an offense if he

---

[8] *See also* Pa.R.A.P. 126(b) (non-precedential memorandum of Superior Court issued after May 1, 2019, may be cited for its persuasive value).

- 11 -

knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 Pa.C.S.A. § 2904(a). This Court has interpreted Section 2904(a) as follows:

> A "taking" from custody "connotes a substantial interference with parental control." . . . Although no case has assigned a specific definition to "taking," it appears that an affirmative physical removal of the child is necessary. *See, e.g., Commonwealth v. Stewart*, 375 Pa. Super. 585, 544 A.2d 1384 [(Pa. Super. 1988)] (paternal grandparents removed children from mother while aware that she had lawful custody); . . . *Commonwealth v. Johnson,* 263 Pa. Super. 512, 398 A.2d 694 ([Pa. Super.] 1979) (defendant convicted of both kidnapping and interference with custody of children for unlawfully taking child under fourteen years old); *Commonwealth v. Thrush,* 23 Pa. D. & C. 3d 302 (Cumberland County 1980) (uncle removed child from school without reason). Similarly, "enticing" has been defined as "[t]o wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce." *Commonwealth v. Cowan,* 9 Pa. D. & C. 3d 582, 585 (Warren County 1978) (quoting Black's Law Dictionary 626 (4th ed.)). Finally, "it is the interruption of lawful custody, and not merely the 'taking', [sic] that constitutes the statutory offense." *Stewart*, 375 Pa. Super. at 593, 544 A.2d at 1388.

*Commonwealth v. Rodgers*, 599 A.2d 1329, 1331 (Pa. Super. 1991).

Appellant contends that his trip with the victim to purchase tobacco, which took 22 minutes, was too brief to constitute a violation of Section 2904. The plain language of the statute, however, imposes no time requirement. *See* 18 Pa.C.S.A. § 2904(a). "[I]t is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011). Appellant violated the elements spelled out in the statute. Appellant "took"

the victim by removing her from her residence, traveling with her to a store in his car, and purchasing tobacco products for her. 18 Pa.C.S.A. § 2904(a). In the words of *Rodgers*, this episode constituted an "interruption" and a "substantial interference" of the "lawful custody" of the victim's mother. *Id.*, 599 A.2d at 1331. Thus, Appellant's challenge to the sufficiency of the evidence fails.

Both the trial court and Appellant refer us to decisions which they claim make the length of time of a taking relevant under Section 2904. These decisions do not persuade us that length of time is pertinent.

The trial court refers us to *Commonwealth v. McClintock*, 639 A.2d 1222 (Pa. Super. 1994), in which the defendant convinced an eight-year-old child to get into his car on the pretext of showing him where a particular store was located. The defendant was not related to the child, and the child was in the car for one to five minutes. The defendant claimed the evidence was insufficient to constitute a violation of Section 2904 because "[the child] was in his car only momentarily" and because this statute only applies to estranged parents. *Id.*, 639 A.2d at 1224. Although we concluded that the evidence was sufficient to sustain the defendant's conviction, we did so on the ground that "the wording of the statute . . . extend[s] to actors other than parents." *Id.* at 1225. We did not address the defendant's contention that the incident was too brief to give rise to criminal liability. Thus, *McClintock* does not assist in our review of the present case.

Appellant argues that a brief taking cannot support criminal liability under Section 2904 based upon this Court's statement in **Stewart** that "[w]e are persuaded that it is not merely the act of taking or enticing that constitutes the offense, but rather the continued maintenance of the child outside of the custodian's dominion." **Id.**, 544 A.2d at 1388. This statement, however, cannot be understood without placing it within the context of the remainder of **Stewart**'s discussion and the issue then presented for consideration. Continuing, we further stated,

> We are aided in this interpretation by the case of **Commonwealth v. Chubb**, 3 Pa. D & C 3d 676 (Cumberland 1976), in which the court observed that section 2904 was derived from Model Penal Code 212.4, and quoted the following language from the Joint State Government Commission relating to this section:
>
> > Although this section is somewhat similar to kidnapping, it is intended to protect parental custody from unlawful interruption, even when the child is a willing participant in the interference with custody. The offender under this section, as distinguished from the kidnapper, may be the parent or relative of the child. Removal of the child for a brief period would not be covered by this section. However, as intimated above, *this section would apply to a parent who willfully defies a custody order by taking the child from the parent who was awarded custody.*
>
> 3 Pa.D & C 3d at 679.
>
> Although **Chubb** was primarily concerned with one of the statutory defenses to a section 2904 violation, the language quoted above (and reprinted from Toll, *Pennsylvania Crimes Code Annotated* (1974) at 347-348) would seem to indicate that it is the interruption of lawful custody, and not merely the "taking", that constitutes the statutory offense. Indeed, as appellee correctly observes, if the statute was only intended to

- 14 -

> prohibit the physical taking, there would be no reason for the Joint State Government Commission to have commented that "removal of the child for a brief period is not covered by this section."

*Stewart*, 544 A.2d at 1388 (emphasis in original). The issue in *Stewart* was whether someone who continued to keep a child from his rightful custodian until after the statute of limitations has run is no longer guilty of interference with custody. We held unequivocally not, since to do so would result in a construction that was absurd, impossible of execution or unreasonable. We construed Section 2904 to deal with a continuing offense and held that the statute of limitations was tolled until the child in that case was returned to the custody of his mother. The focus of Section 2904 is the unlawful interference with custody, regardless of any length of time. Our statement that "it is not merely the act of taking or enticing that constitutes the offense, but rather the continued maintenance of the child outside of the custodian's dominion" was meant to elucidate why the statute of limitations did not run during the time the child was unlawfully kept from their rightful custodian.

The comment by the Joint State Government Commission[9] that "[r]emoval of the child for a brief period would not be covered by this section", was meant only to compare the crimes of "Interference with Custody of

---

[9] The Joint State Government Commission Report, issued in 1967, recommended the adoption of a Crimes Code for Pennsylvania comprised of a series of statutes listed in the Report. The legislature eventually enacted a Crimes Code at the end of 1972 which became effective in 1973.

Children" with "Kidnapping". A person commits the crime of kidnapping if he "unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation." **See** 18 Pa.C.S.A. § 2901(a). By comparison, the crime of interference with custody of children contains no temporal element. As explained by the Joint State Government Commission with respect to Section 2904,[10]

> Although this section is somewhat similar to kidnapping, it **is intended to protect parental custody from unlawful interruption**, even when the child is a willing participant in the interference with custody. The offender under this section, **as distinguished from the kidnapper,** may be the parent or relative of the child. **Removal of the child for a brief period would not be covered by this section.** However, as intimated above, this section would apply to a parent who wilfully defies a custody order by taking the child from the parent who was awarded custody.

Joint State Government Commission, Proposed Crimes Code for Pennsylvania (1967) at 104-106 (emphasis added). Appellant is not entitled to relief on this claim.

We turn to Appellant's next argument, a claim that the verdict for corruption of minors and interference with custody of children was against the weight of the evidence. Appellant asserts that "he was convicted for making

---

[10] In its report, the crime of "Kidnapping" is identified as Section 1101 and the crime of "Interference with Custody of Children" is identified as Section 1104. We use the codified sections herein to avoid any confusion.

a joke and spending less than a half hour with a child. If that is not shocking, and thus against the weight of the evidence, nothing is." Appellant's Brief at 16. The trial court acted within its discretion in rejecting this argument.

> A motion seeking a new trial based on the weight of the evidence is

> addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

>> Appellate review of a weight claim is a *review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations and quotation marks omitted) (emphasis in the original).

> The trial court reasoned:

> [Appellant] maintains that [he] was convicted for making a joke and spending less than a half (1/2) hour with the victim. To the contrary, [Appellant] was convicted for requesting that the victim participate in wearing one (1) time per week pantyhose without any underwear, that the victim provide the pantyhose to [Appellant], and that [he] provide the victim money and tobacco products. [Appellant] implemented this plan by traveling to the victim's residence, taking the victim from the residence to a convenience store, and purchasing for the victim nicotine products.

> This Court is not shocked by the verdict entered by the Jury in this matter.

Trial Court Opinion, 8/2/23, at 8-9. Based on this reasoning, we conclude that the trial court acted within its discretion by rejecting Appellant's challenge to the weight of the evidence.

The Commonwealth's cross-appeal questions whether the trial court erred in granting Appellant's post-sentence motion challenging the sufficiency of the evidence underlying his conviction under 18 Pa.C.S.A. § 6318(a)(4) for unlawful contact with a minor. We apply the same standard of review as above when addressing Appellant's sufficiency challenges. We agree with the trial court that the evidence was insufficient to sustain Appellant's conviction under Section 6318(a).

The statute provides in relevant part:

> (a) **Offense defined.** –A person commits an offense if the person is intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under any of the following . . .

> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

- 18 -

(2) Open lewdness as defined in section 5901 (relating to open lewdness).

(3) Prostitution as defined in section 5902 (relating to prostitution and related offenses).

(4) Obscene and other sexual materials and performances as defined in section 5903 (relating to obscene and other sexual materials and performances).

(5) Sexual abuse of children as defined in section 6312 (relating to sexual abuse of children).

(6) Sexual exploitation of children as defined in section 6320 (relating to sexual exploitation of children).

\*    \*    \*    \*

(c) **Definitions**. –As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\*  \*  \*

**"Contacts."** Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

**"Minor."** An individual under 18 years of age.

18 Pa.C.S.A. § 6318.

We have construed Section 6318 as follows:

In order to be convicted under section 6318, a defendant does not have to be convicted of the underlying offense for which he contacted the minor. *Commonwealth v. Reed*, 607 Pa. 629, 9 A.3d 1138 (2010). In other words, the offenses designated in sections 6318(a)(1)–(6) are not predicate offenses for the offense of unlawful contact with a minor. *Id.* Rather, a defendant is guilty under section 6318 if he or she *contacts* the minor for the purpose of engaging in the prohibited behaviors criminalized in Chapter 31 and 18 Pa.C.S.[A.] §§ 5901, 5902, 5903, 6312, and 6320 of the Crimes Code.

***Commonwealth v. Weimer***, 167 A.3d 78, 83 (Pa. Super. 2017) (emphasis

in the original).

In the present case, Appellant was charged under Section 6318(a)(4)

with contacting the victim for the purpose of violating 18 Pa.C.S.A. § 5903, a

statute entitled, "Obscene and other sexual materials and performances."

Section 5903(a) provides:

> No person, knowing the obscene character of the materials or performances involved, shall:
>
> (1) display or cause or permit the display of any explicit sexual materials as defined in subsection (c) in or on any window, showcase, newsstand, display rack, billboard, display board, viewing screen, motion picture screen, marquee or similar place in such manner that the display is visible from any public street, highway, sidewalk, transportation facility or other public thoroughfare, or in any business or commercial establishment where minors, as a part of the general public or otherwise, are or will probably be exposed to view all or any part of such materials;
>
> (2) sell, lend, distribute, transmit, exhibit, give away or show any obscene materials to any person 18 years of age or older or offer to sell, lend, distribute, transmit, exhibit or give away or show, or have in his possession with intent to sell, lend, distribute, transmit, exhibit or give away or show any obscene materials to any person 18 years of age or older, or knowingly advertise any obscene materials in any manner;
>
> (3)(i) design, copy, draw, photograph, print, utter, publish or in any manner manufacture or prepare any obscene materials; or
>
> (ii) design, copy, draw, photograph, print, utter, publish or in any manner manufacture or prepare any obscene materials in which a minor is depicted;
>
> (4)(i) write, print, publish, utter or cause to be written, printed, published or uttered any advertisement or notice of any kind giving information, directly or indirectly, stating or purporting to state where, how, from whom, or by what means any obscene materials can be purchased, obtained or had; or

(ii) write, print, publish, utter or cause to be written, printed, published or uttered any advertisement or notice of any kind giving information, directly or indirectly, stating or purporting to state where, how, from whom or by what means any obscene materials can be purchased, obtained or had in which a minor is included;

(5)(i) produce, present or direct any obscene performance or participate in a portion thereof that is obscene or that contributes to its obscenity; or

(ii) produce, present or direct any obscene performance or participate in a portion thereof that is obscene or that contributes to its obscenity if a minor is included;

(6) hire, employ, use or permit any minor child to do or assist in doing any act or thing mentioned in this subsection;

(7) knowingly take or deliver in any manner any obscene material into a State correctional institution, county prison, regional prison facility or any other type of correctional facility;

(8) possess any obscene material while such person is an inmate of any State correctional institution, county prison, regional prison facility or any other type of correctional facility; or

(9) knowingly permit any obscene material to enter any State correctional institution, county prison, regional prison facility or any other type of correctional facility if such person is a prison guard or other employee of any correctional facility described in this paragraph.

18 Pa.C.S.A. § 5903(a).

Additionally, Section 5903(b) defines the relevant terms as follows:

As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Community."** For the purpose of applying the "contemporary community standards" in this section, community means the State.

* * *

**"Material."** Any literature, including any book, magazine, pamphlet, newspaper, storypaper, bumper sticker, comic book or

writing; any figure, visual representation, or image, including any drawing, photograph, picture, videotape or motion picture.

**"Minor."** An individual under 18 years of age.

\* \* \*

**"Obscene."** Any material or performance, if:

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

**"Performance."** Means any play, dance or other live exhibition performed before an audience.

\* \* \*

**"Sexual conduct."** Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals.

18 Pa.C.S.A. § 5903(b).

The record supports the trial court's determination that Appellant did not contact the victim for the purpose of violating any provision within Section 5903(a). More specifically, the trial court properly found that:

(1)    Appellant did not contact the victim for the purpose of violating Section 5903(a)(1) because he did not intend to "display . . . obscene "materials . . . in or on any window, showcase, newsstand, display rack, billboard, display board, viewing screen, motion picture screen, marquee or

similar place." *Id.* Section 5903 defines materials as "any literature, including any book, magazine, pamphlet, newspaper, storypaper, bumper sticker, comic book or writing; any figure, visual representation, or image, including any drawing, photograph, picture, videotape or motion picture." 18 Pa.C.S.A. § 5903(b). The only item that Appellant requested from the victim, pantyhose, is not a material under this definition;

(2) Appellant did not contact the victim for the purpose of violating Section 5903(a)(2) because he did not intend to "sell, lend, distribute, transmit, exhibit, give away or show," or "offer to sell, lend, distribute, transmit, exhibit, give away, or show . . . obscene materials **to** a person eighteen years of age or older." *Id.* (emphasis added). Instead, Appellant solicited an item (pantyhose) **from** a person under eighteen years of age that did not constitute a material under Section 5903;

(3) Appellant did not contact the victim for the purpose of violating Section 5903(a)(3) because he did not intend to "design, copy, draw, photograph, print, utter, publish or in any manner manufacture or prepare any obscene materials." *Id.* The only item Appellant solicited from the victim, pantyhose, is not a material under Section 5903;

(4) Appellant did not contact the victim for the purpose of violating Section 5903(a)(4), which prohibits advertisements concerning procurement of obscene materials. There was no evidence that Appellant had any intention

of publishing advertisements, and the only item Appellant solicited from the victim, pantyhose, is not a material under Section 5903;

(5) Appellant did not contact the victim for the purpose of violating Section 5903(a)(5), which prohibits the "produc[tion], present[ation] or direct[ion] [of] any obscene performance." *Id.* Section 5903(b) defines "performance" as "any play, dance or other live exhibition performed before an audience." *Id.* The evidence does not indicate that Appellant intended the victim to perform before an audience;

(6) Appellant did not contact the victim for the purpose of violating Sections 5903(a)(7), (a)(8), or (a)(9), which prohibit delivery of obscene materials to correctional facilities and/or incarcerated individuals. Appellant was not incarcerated at the time of his acts and did not facilitate delivery of anything to any correctional facility;

(7) Appellant did not contact the victim for the purpose of violating Sections 5903(a)(6), which prohibits "hir[ing], employ[ing], us[ing] or permit[ting] any minor child to do or assist in doing any act or thing mentioned in [the foregoing subsections]," *id.*, since the discussion above demonstrates that Appellant did not intend to violate any subsection of Section 5903(a). *See* Trial Court Opinion, 8/2/23, at 5-8.

The Commonwealth insists that the evidence was sufficient on the ground that Appellant's conduct in soliciting the victim's pantyhose satisfied the definition of "obscene" under Section 5903(b). Even assuming that

Appellant's conduct satisfied the definition of "obscene," the trial court's analysis above demonstrates that Appellant did not violate other necessary elements within each subsection of Section 5903(a). As a result, his conviction for unlawful contact with minors cannot stand.

The Commonwealth also contends that the trial court erred in granting Appellant's post-sentence motion for judgment of acquittal because it previously denied Appellant's petition for habeas corpus and his motion for acquittal at the close of evidence. We disagree.

Pennsylvania Rule of Criminal Procedure 606 provides:

(A) A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged **in one or more of the following ways**:

(1) a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief;

(2) a motion for judgment of acquittal at the close of all the evidence;

(3) a motion for judgment of acquittal filed within 10 days after the jury has been discharged without agreeing upon a verdict;

(4) a motion for judgment of acquittal made orally immediately after verdict;

(5) a motion for judgment of acquittal made orally before sentencing pursuant to Rule 704(B);

(6) **a motion for judgment of acquittal made after sentence is imposed pursuant to** Rule 720(B); **or**

(7) a challenge to the sufficiency of the evidence made on appeal.

Pa.R.Crim.P. 606(a) (emphases added). Consistent with the use of "or," the Comment to Rule 606 states:

> A defendant may challenge the sufficiency of the evidence in any one or more of the ways listed in paragraph (A) of this rule. . . . If the defendant does move [for judgment of acquittal] before verdict and the motion is denied, the defendant may renew the motion before the trial court pursuant to paragraphs (A)(3) through (A)(6).

Comment, Pa.R.Crim.P. 606. Thus, contrary to the Commonwealth's argument, the fact that Appellant moved unsuccessfully for judgment of acquittal prior to verdict did not preclude him from again challenging the sufficiency of the evidence in post-sentence motions or preclude the trial court from reversing its prior orders denying dismissal or acquittal on the charge of unlawful contact with a minor.

Finally, we address Appellant's contention that the trial court erred by designating him as an SVP under the Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10-9799.42. In the first part of his argument, Appellant asserts that SORNA is unconstitutional under our Supreme Court's opinion in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020). This claim fails because after further proceedings in *Torsilieri*, our Supreme Court held that SORNA is constitutional. *See Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024).

Alternatively, Appellant contends that even if SORNA is constitutional, the trial court erred by concluding that the Commonwealth furnished clear and convincing evidence that Appellant is an SVP. Once again, we disagree.

When this Court reviews a challenge to the sufficiency of the evidence underlying an SVP determination, our standard of review is *de novo* and our

scope of review is plenary. ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006). In conducting sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, who prevailed upon the issue at trial. ***Id.*** In most cases, we will determine whether the record supports the findings of fact made by the trial court and then review the legal conclusions made from them. ***Commonwealth v. Krouse***, 799 A.2d 835, 838 (Pa. Super. 2002). However, in cases, as here, where the trial court has stated its legal conclusions but has not provided specific findings of fact, we will review the entire record of the post-conviction SVP hearing as our scope of review is plenary. ***Id.***

Section 9799.12 of SORNA defines the term "sexually violent predator" as

> [a]n individual who committed a sexually violent offense on or after December 20, 2012, for which the individual was convicted, [ ] who is determined to be a [SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9799.12 (effective June 12, 2018 to May 7, 2024); ***see also***

***Commonwealth v. Butler***, 226 A.3d 972, 992 (Pa. 2020) (a SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that [he is] highly likely to continue to commit sexually violent offenses"). A "sexually violent offense" is "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a

Tier I, Tier II[,] or Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted." 42 Pa.C.S.A. § 9799.12 (effective June 12, 2018 to May 7, 2024). SORNA defines "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

Under Section 9799.24 of SORNA, after a defendant is convicted of a sexually violent offense, but before sentencing, the trial court shall order the Sexual Offenders Assessment Board ("SOAB") to conduct an "assessment of the individual to determine if the individual should be classified as a [SVP.]" 42 Pa.C.S.A. § 9799.24(a) and (b). In performing its assessment, the SOAB examines, *inter alia*, the following:

> (1) Facts of the current offense, including:
>
> > (i) Whether the offense involved multiple victims.
> >
> > (ii) Whether the individual exceeded the means necessary to achieve the offense.
> >
> > (iii) The nature of the sexual contact with the victim.
> >
> > (iv) Relationship of the individual to the victim.
> >
> > (v) Age of the victim.
> >
> > (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
> >
> > (vii) The mental capacity of the victim.
>
> (2) Prior offense history, including:
>
> > (i) The individual's prior criminal record.
> >
> > (ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b)(1-4).

The trial court's inquiry at an SVP hearing

differs from the assessment conducted by SOAB. "Whereas the SOAB member must consider the fifteen factors listed in section 9799.24(b), the trial court must determine whether the Commonwealth has proven by clear and convincing evidence that the defendant is an individual who has "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12 (providing the definition of a "sexually violent predator").

***Commonwealth v. Moore***, 307 A.3d 95, 101 (Pa. Super. 2023). There is no requirement that *all* the statutory factors or any number of them be present or absent to support an SVP designation; the factors are not "a check list with each one weighing in some necessary fashion for or against SVP designation."

***Commonwealth v. Morehart***, 2023 WL 7409256, *2 (Pa. Super., filed Nov. 8, 2023) (citing ***Commonwealth v. Brooks***, 7 A.3d 852, 863 (Pa. Super. 2010)). Nor does the Commonwealth have to show that any certain factor is present or absent to support an SVP determination. ***Brooks***, 7 A.3d at 863.

"Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities." **Id.** (citation omitted). Ultimately, it is the trial court's task to determine whether the Commonwealth has demonstrated by clear and convincing evidence that a defendant is to be classified as an SVP due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. §§ 9799.12 and 9799.24.

This Court's task in an appeal from the determination of SVP status "is one of review, and not of weighing and assessing evidence in the first instance." **Meals**, 912 A.2d at 223.

In this case, the Commonwealth presented an expert psychologist in the field of SVP assessments, William G. Allenbaugh, who opined that Appellant met the criteria for SVP status based on his review of the factors in Section 9799.24(b)(1-4). **See** N.T., 5/16/23, at 8-17. Allenbaugh testified that he was familiar with and reviewed all the factors necessary to qualify someone as an SVP. **Id.** at 9. He testified that there was only one victim in this case. **Id.** However, in the past, there were two prior victims under the age of consent, indicating to him a pattern of behavior against nonconsenting females. **Id.** There was no evidence to indicate Appellant exceeded the means necessary to achieve the offense. **Id.** at 9-10. Allenbaugh examined the nature of the sexual contact, which in this case was Appellant's solicitation

of a victim to satisfy his fetish. *Id.* at 10. Appellant and the victim were acquaintances, having met on Facebook, but apparently had known each other for some time. *Id.* The victim was 13 years old; Appellant was a 50-year-old man. *Id.* There was no unusual cruelty or sadistic behavior in this case. *Id.* There was no indication to indicate the victim suffered from any condition that would have increased her vulnerability. *Id.* at 11.

Appellant has a prior arrest record dating back to age 23 that included failures to register for Megan's Law, PFA violations, and two prior sex offenses, one in 1991 and one in 2006. *Id.* Allenbaugh found this indicated an inability to learn from past mistakes and the possible presence of paraphilia in light of three sexual offenses against adolescent or younger females. *Id.* Appellant completed sex offender programming within the DOC, but records were unclear whether he completed outpatient treatment while on parole. *Id.* However, reoffending after completing or engaging in sex offender treatment is a factor that suggested the strength of paraphilia. *Id.* at 12. While it did not appear that illegal drugs were involved, Appellant used vape pods to manipulate or control the victim or to solicit her to send him pictures of her in underwear. *Id.* There was no history of depression, but that is considered a concurrent disorder not relevant to sexual offending. *Id.*

The offense in this case reflected a continuation of sexually offensive behavior against children dating back to 1993. *Id.* at 12-13. Appellant's present and past sexually offensive behavior demonstrated that Appellant has

a deviant sexual interest in female children unable to give legal consent for sexual behavior based on their age. *Id.* at 13. It was Allenbaugh's professional opinion that Appellant met the criteria for other specified paraphilic disorder, nonconsent, which is considered a mental abnormality under the Act. *Id.* It also appeared to Allenbaugh that Appellant was in the initial stages of grooming the victim to normalize sexual behavior with him. *Id.* The use of nicotine pods and money with the victim increased his leverage with her and enabled him to gain control of the relationship. *Id.*

Allenbaugh looked at other mental factors that are reasonably supported in the sexual offender assessment field related to the risk to reoffend. Research demonstrates that multiple factors attributable to Appellant — having a deviant sexual interest in children, having two or more prior victims, having two or more prior arrests, and having sexually reoffended after engaging in and completing sex offender specific treatment — were all factors reasonably related to the risk of reoffense. *Id.* at 13-14.

Allenbaugh looked at mental abnormality or personality disorder criteria that makes sexual offenses likely and that exhibits predatory behavior. In his professional opinion, Appellant suffered from a paraphilic disorder, nonconsent, which is considered a congenital or acquired condition that is an

impetus to sexual offending. *Id.* at 14. Under the DSM-5,[11] paraphilias may wax and wane, but they are considered lifetime disorders for which there is no cure. *Id.* Allenbaugh found that this condition overrode Appellant's emotional and volatile control. Having been convicted twice before, Appellant knew the potential consequences to himself and his victim, but in spite of that, he engaged in sexual behavior with the 13-year-old victim to satisfy his sexually deviant interest. *Id.* at 14-15. This indicated the strength of the paraphilia involving teenagers, specifically teenage girls, and it was something that past arrests and treatment have not been able to cure.[12] *Id.* at 15. Appellant utilized a deviant sexual pathway to offend and therefore suffers from a mental abnormality as defined under the Act. *Id.* Allenbaugh had no doubt that the relationship Appellant developed with the victim was in whole or in part for the purpose of sexual victimization and exploitation, and that he was more interested in his own sexual desires than the welfare of the child. *Id.* at 15-16. It was his professional opinion that Appellant met the criteria of predatory as defined under the Act, *id.*, and met the criteria to be classified as a sexually violent predator. *Id.* at 16.

---

[11] The Diagnostic and Statistical Manual of Mental Illnesses is the American Psychiatric Association's professional reference book on mental health and brain-related conditions. The number "5" attached to the name of the DSM refers to the fifth — and most recent — edition of this book.

[12] The Notes of Testimony use the term "occur" as opposed to "cure", which we assume is a typographical error given the context of this part of the witness's testimony.

At the conclusion of the SVP hearing, the court announced that it found by clear and convincing evidence that Appellant is a sexually violent predator. *Id.* at 25. The court then proceeded to enter this determination in an order dictated into the record. *Id.* Under our plenary standard of review, we conclude that the evidence, viewed in a light most favorable to the Commonwealth, was sufficient for the court to conclude, based upon clear and convincing evidence, that Appellant was an SVP.

In his brief, Appellant argued that the evidence was insufficient to prove that he was an SVP because the evidence rested upon one picture that was never generated, information was reviewed from a prosecutorial viewpoint, the offense did not involve multiple victims, necessary means were not exceeded, contact was not in-person, the parties were not strangers, no cruelty was involved, the victim was not mentally infirm, and no illegal drugs were at play. What Appellant fails to appreciate is that he is attempting to argue the weight of the evidence in this sufficiency challenge. He also fails to acknowledge that the criteria under Section 9799.24 are non-exclusive factors that do not operate as a checklist where each factor weighs, in some absolute fashion, either for or against an SVP classification. *Meals, Moorehart, Brooks, supra.* Appellant offered no evidence or testimony during the SVP hearing. Instead, counsel relied solely upon his cross-examination and concluding argument. Appellant cannot succeed with a sufficiency challenge by simply asserting evidentiary points that militate against an SVP

determination without demonstrating why other evidence relied upon by the Commonwealth and court do not support this determination. Once the court makes its SVP determination, the relevance of cross-examination for purposes of appellate sufficiency review is a very different matter. *Meals.* The appellate task requires construing the evidence in the light most favorable to the party that prevailed before the factfinder. *Id.* Finding that the evidence clearly and convincingly was sufficient to classify Appellant as an SVP, we conclude Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/01/2024

- 35 -