J-S34021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL CRAIG PHILLIPS | : | |
| | : | |
| Appellant | : | No. 1246 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 5, 2021
In the Court of Common Pleas of Beaver County
Criminal Division at No:  CP-04-CR-0001529-2020

BEFORE:  LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED: February 18, 2025**

Michael Craig Phillips (Appellant) was found guilty, following a jury trial, of 12 sexual offenses against the minor child, D.M.  Three of the counts stemmed from D.M.'s allegation that Appellant showed her a video depicting "gay pornography."[1]  To corroborate that claim, the Commonwealth was permitted to introduce into evidence a photograph of Appellant performing

---

[1] Appellant was convicted of Count 1 - Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. § 3123(b); Count 2 - Unlawful Contact with a Minor, 18 Pa.C.S.A. § 6318(a)(1); Counts 3 and 4 - Aggravated Indecent Assault, 18 Pa.C.S.A. § 3125(a)(7); Count 5 - Indecent Assault, 18 Pa.C.S.A. § 3126(a)(7); Count 6 - Endangering Welfare of Children, 18 Pa.C.S.A. § 4304(a); Count 7 - Corruption of Minors, 18 Pa.C.S.A. § 6301(a)(1)(ii); Count 8 – Criminal Use of Communication Facility, 18 Pa.C.S.A. § 7512(a); Count 9 – Indecent Assault,  18 Pa.C.S.A. § 3126(a)(7); Count 10 – Disseminating Explicit Sexual Material to a Minor, 18 Pa.C.S.A. § 5903(c)(1); Count 11 – Indecent Assault, 18 Pa.C.S.A. § 3126(a)(8); and Count 12 – Indecent Assault Without Consent, 18 Pa.C.S.A. § 3126(a)(1).  Appellant was charged with Counts 7, 8, and 10 based on his display of the pornographic video to D.M.

fellatio on another man. The photo was never shown to the minor, and it was admitted solely to corroborate that other explicit media depicting homosexual acts was shown to the child, and to demonstrate the sexual relationship between Appellant, Appellant's wife (Sydni Phillips), and the other man in the photo, Z.T. Appellant now contends in this appeal that the entire verdict was compromised because the photo was both irrelevant and highly prejudicial. Finding merit in Appellant's claims, we vacate the judgment of sentence so that he may receive a new trial.[2]

Appellant met Sydni Phillips in 2015, and they married in 2017. The minor victim in this case, D.M., is Phillips' daughter from a prior marriage. At all relevant times, D.M. resided with Phillips and Appellant on weekends and with her biological father on weekdays.

During their marriage, Appellant encouraged Phillips to seek out other sexual partners. *See* N.T. Trial, 7/8/2021, at 106-07. He even drafted a "sex contract" to formalize the "rules and expectations" of such extramarital encounters. *Id*., at 47-48. The terms of this contract explicitly specified that Appellant "approved enthusiastically" of the arrangement. *Id*.

---

[2] This case returns to us on remand from the Pennsylvania Supreme Court, pursuant to its *per curiam* order entered on September 25, 2024. In that order, our Supreme Court vacated this Court's earlier memorandum decision entered on February 13, 2024, and directed us to specifically consider the prejudice caused to Appellant by the admission of the Commonwealth's photographic exhibit. We previously found waiver on this issue. Both parties were permitted to file supplemental briefing on that sole issue.

In fact, Appellant more than insinuated his own sexual interest in other men. A condition in the contract was the non-use of a condom during intercourse with Phillips so that Appellant would have "a little memento of your time together." *Id*., at 49. Appellant also demanded that Phillips' partners send him "pictures, videos, or whatever else" they could provide. *Id*.

Appellant's penchant for recording and viewing sexual acts was the unintended catalyst of the present case. In December 2019, D.M.'s step-sister, E.P., admitted to her mother that D.M. had shown her videos on Phillips' phone of Appellant and Phillips having sex.[3] E.P., who was six years old at the time, had gotten uncomfortable playing a "sexy game" with a friend, and she had learned that behavior from the explicit material D.M. had shown her. E.P. stated further that D.M., who was then nine years old, "had licked her vagina while they were in their bed." N.T. Trial, 7/7/2021, at 77, 81. When questioned further by her mother, E.P. relayed being told by D.M. that Appellant "touches her vagina." *Id*., at 84.

The children's statements were reported to the police. Soon after that, the Beaver County Children and Youth Services agency (CYS) arranged for a forensic interviewer to speak with D.M. and E.P. In her interview with a CYS caseworker, D.M. stated that Appellant would sometimes "lick" her vagina,

---

[3] E.P. is a daughter from Appellant's prior marriage who resided at all relevant times with her mother. Appellant and Phillips also had two children together, neither of whom were involved in the present case.

and she recounted one occasion, when she was about five years old, in which Phillips caught Appellant in the act of touching her genitals. *See* N.T. Trial, 7/9/2021, at 20-24.

She recalled that on another occasion in 2017, when D.M. was about seven years old, Appellant reportedly showed her "gay pornography" on his cell phone. *See id*., at 25. Finally, D.M. described a third incident, when she was about nine years old, in which Appellant touched her vagina while the two were in a bed. *Id*., at 28. The police contacted Appellant and Phillips after the interview, and both denied that the incidents described by D.M. had ever occurred.

In February 2020, while D.M.'s claims were still being investigated by the police, Appellant and Phillips met a man named Z.T., who moved into their home in March of that year. The three of them began a relationship in accordance with the above-mentioned "sex contract" which Appellant had drafted. In July 2020, Phillips and Z.T. moved out of Appellant's home. During that period, Z.T. pressed Phillips to contact the police and substantiate D.M.'s allegations that Appellant had sexually abused her.

That same month, in July 2020, the police contacted Phillips for another interview, and she acquiesced. Phillips retracted her earlier statements, asserting that, in 2016, she once had caught Appellant abusing D.M. in their home, just as D.M. had described; she also had been told about the incident in which the child was shown a pornographic video. *See* N.T. Trial, 7/8/2021,

at 72-76, 80-81. Despite fearing for D.M.'s safety, Phillips was reluctant to report the incidents because she was financially dependent on Appellant. *See id*., at 23-24.

Soon after Phillips' second interview, the police obtained a warrant to search Appellant's cell phone. The phone contained pornographic photos and videos depicting Phillips and Appellant taking part in various sexual acts. One series of photos created on March 16, 2020, showed Appellant and Phillips engaged in oral sex with Z.T.

Prior to trial, the Commonwealth sought to admit one of the electronic images. The proffered evidence, labeled "Commonwealth's Exhibit 4," was a full-color print-out of a digital version of a photo downloaded from Appellant's phone. The image (referred to below as "Exhibit 4, or "the photo") was blown up from a digital image on Appellant's phone, and it completely filled an 8.5 by 11-inch sheet of paper. The photo, taken well after the 2016 and 2017 incidents, depicted Appellant and Phillips performing fellatio on Z.T. together.

The Commonwealth argued that the photo was relevant because several of the charges, *i.e.*, corruption of minors (Count 7), criminal use of a communication facility (Count 8), and disseminating explicit sexual material to a minor (Count 10), arose from D.M.'s claim that Appellant had shown her a pornographic video of two men. It was impossible for Exhibit 4 to have been shown to D.M. as it was taken after the alleged offenses occurred, and yet, the Commonwealth suggested, somewhat disingenuously, that an explicit

image of Appellant and another man corroborated D.M.'s allegation because it demonstrated Appellant's "sexual interest" in that kind of sexual activity:

> But [Phillips] is going to testify, I anticipate that she's going to say that this has been a sexual interest of [Appellant's] for years including the relevant time period in which [D.M.] was shown a photo, and then **the photo just corroborates that it's a continuing sexual interest of his**.
>
> Otherwise, it, it seems unlikely for a man, who is married to a woman, for us to say that he's watching gay pornography and showing it to a child when **the natural thought process from that is that that's not even a sexual interest of his**.

N.T. Trial, 7/6/2021, at 10 (emphasis added).

The case then proceeded to trial. In its opening statement, the defense attempted to impeach Phillips' credibility by asserting that she was motivated to change her story and implicate Appellant so that she could pursue an exclusive relationship with Z.T. a few months after he had moved into Appellant's house: "[Z.T.'s] moved into their home, and there is a sexual relationship there. Around the beginning of June of 2020, [Phillips] kicks Michael out to carry on a relationship with [Z.T.]." N.T. Trial, 7/7/2021, at 41.

Once the opening statements had concluded, the Commonwealth, in an argument we find not to be entirely coherent, relied on the defense's argument about Phillips' motive to present an additional ground for admitting the photo:

> The defense in their opening talked about [Phillips'] story changing because she fell in love with [Z.T.], moved him in and started having sex with him. **The photographs that the Commonwealth recovered from [Appellant's] phone is, in fact, [evidence of] a three-way sexual relationship with**

**[Appellant, Phillips, and Z.T.]. I believe that door's open now, and I can show that photo, so I believe that door has been opened, and now that I can actually show that photograph to [rebut the theory that] she was cheating on him.**

N.T. Trial, 7.7/2021, at 232 (emphasis added).

In response, defense counsel disagreed that Appellant's sexual relationship with Z.T. had ever been put at issue. *Id*., at 233-34. The defense repeated its earlier stipulation that Appellant and Z.T. had been sexually involved prior to Phillips' decision to support D.M.'s accusations against Appellant. *See id*. Appellant had never disputed the fact that he had encouraged, and even facilitated, a three-way sexual relationship between himself, Philips, and Z.T.

This was entirely consistent with his theory that, after the relationship had formed in early 2020, Philips and Z.T. decided to become exclusive with each other, giving Phillips a motive to incriminate Appellant by July 2020. *See id*, at 235-37. The trial court overruled the defense's objection, allowing the Commonwealth to introduce Exhibit 4 so that Philips could identify Appellant as the man in the photo performing fellatio on Z.T. *See id*., at 238.

On the following day of the trial, the defense renewed its objection to the admission of the photo. *See* N.T. Trial, 7/8/2021, at 52. After the objection was again overruled, the defense then requested, and was granted, a cautionary jury instruction as to the photo's possible relevance. The trial court then instructed the jury as follows:

**The photo and reference to the photo is being admitted for the purposes of relating to the witness's relationship with [Z.T.,] as well as with respect to the issue that relates to the alleged incident showing gay porn.** Those are the purposes and reasons why this exhibit is being admitted, and that's what you will be considering.

You are, however, not to consider this evidence as probative, meaningful, for any other purpose including whether or not [Appellant] has a sexual interest in children.

*Id*., at 57 (emphasis added).

Phillips went on to testify at trial about the victim's allegations, and then specifically about the arrangement she and Appellant had with Z.T. The prosecution admitted the photo and had Phillips describe what it depicted – she and Appellant performing fellatio on Z.T. *See id*., at 57-60.

In its closing statement to the jury, the Commonwealth again stated that Exhibit 4 was relevant for "corroboration" of other evidence:

Next in this case, I admitted into evidence a photograph that was referred to by counsel for the Commonwealth as well as for [Appellant]. **This photograph was admitted into evidence for the purpose of corroboration**. It is not a pleasant photograph to look at necessarily. You should not let it stir up your emotions to the prejudice of [Appellant]. Your verdict must be based on a rational and fair consideration of all the evidence and not on passion or prejudice against [Appellant], the Commonwealth, or anyone else connected to this case.

N.T. Trial, 7/12/2021, at 95-96 (emphasis added).

Appellant was found guilty as charged, and the judgment of sentence was entered by the Court of Common Pleas of Beaver County (trial court) on November 5, 2021. Counsel for Appellant filed a timely post-sentence motion three days later. Counsel also filed a motion for an extension of time to file a

supplemental post-sentence motion, which the trial court granted, and a supplemental post-sentence motion was timely filed. The trial court denied the supplemental post-sentence motion on July 27, 2022, and a timely notice of appeal was filed on September 15, 2022.[4]

In compliance with Pa.R.A.P. 1925, the trial court entered an opinion giving the reasons why the judgment of sentence should be affirmed. **See** Trial Court 1925(a) Opinion, 11/14/2022, at 12-15. As to the admission of the disputed photo exhibit, the trial court first found that it was "highly probative in corroborating" D.M.'s testimony that Appellant "showed D.M. gay pornography on his phone." **Id**., at 13. The trial court reasoned further that "without the context provided by this documentary evidence . . . it would be much easier for the jury to disbelieve D.M.'s testimony that [Appellant] had been watching gay pornography." **Id**., at 14.

Further, the trial court found that the photo was relevant to corroborate Phillips' testimony regarding the nature of her relationship with Z.T., as well as Appellant's sexual interest in men. **See id**. It was noted by the trial court that the photo "was contrary to the characterization" of the relationship made by Appellant's defense counsel in the opening statement. **See id**.

---

[4] Appellant's counsel missed the deadline for filing an appeal, but postconviction relief was granted on September 1, 2022, reinstating Appellant's appellate rights, *nunc pro tunc*.

In this appeal, Appellant's only claim is that he is entitled to a new trial as to all 12 of his convictions because he was unfairly prejudiced by the trial court's erroneous admission of the Commonwealth's photo exhibit. He argues that the photo was improperly admitted because under Pa.R.E. 404(b), it was evidence of a "wrong or other act" that could not be used to prove Appellant's character or propensity to commit the charged crimes. *See* Appellant's Brief, at 9-13.[5]

The Commonwealth responds that the rule relied upon by Appellant (Pa.R.E. 404(b)) does not apply because the parties had agreed at trial that the photo did not depict a crime, wrong, or other act, as defined by the rule. According to the Commonwealth, the photo was properly admitted because it was relevant to prove issues of material fact, *i.e.*, to bolster the credibility of D.M. and Phillips, and thereby prove the charges arising from D.M. being shown a pornographic video.

"The question of admissibility of photographs . . . is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error." *Commonwealth v. Stein*, 548 A.2d 1230, 1233 (Pa. Super. 1988). An abuse of discretion occurs where the trial court's ruling results from "manifest unreasonableness, partiality, prejudice, bias, or ill-will,

---

[5] Appellant also has challenged the verdict as being against the weight of the evidence. *See* Appellant's Brief, at 14. In substance, though, this claim merely reiterates the evidentiary issue, so no additional consideration of the weight challenge is warranted.

or such lack of support as to be clearly erroneous." ***Commonwealth v. Laird***, 988 A.2d 618, 636 (Pa. 2010). "Further, discretion is abused when the law is either overridden or misapplied." ***Commonwealth v. Hoover***, 107 A.3d 723, 729 (Pa. 2014).

When ruling on a photo's admissibility, the trial court must apply a two-step analysis. ***See Commonwealth v. Hubbard***, 372 A.2d 687, 697 (Pa. 1977). First, the trial court must determine whether the photo is "inflammatory," which is defined as casting "such an unfair light that it would tend to cloud an objective assessment of the guilt or innocence of the defendant." ***Hubbard***, 372 A.2d at 697. If the photo is found to be inflammatory, then it may be admitted only if the trial court determines it to be "of such essential evidentiary value that [its] need clearly outweighs the likelihood of [it] inflaming the passions of the jurors." ***Commonwealth v. Strong***, 563 A.2d 479, 483 (Pa. 1989).

Photos that are found not to be inflammatory are subject to the usual relevance standard of evidence. ***See id***. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." ***Commonwealth v. Spiewak***, 617 A.2d 696, 699 (Pa. 1992); ***see also*** Pa.R.E. 401. In order for relevant evidence to be admissible, its probative value must outweigh "its prejudicial

impact." ***Spiewak***, 617 A.3d at 699 (citing ***Commonwealth v. Story***, 383 A.2d 155, 160 (Pa. 1978)); ***see also*** Pa.R.E. 403.

Moreover, under Pa.R.E. 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

There is no need for a court to weigh the probative value of evidence against its prejudicial impact when the evidence is completely irrelevant. ***See Story***, 383 A.2d at 160. On review of the erroneous admission of evidence that is not relevant, an appellate court must only assess whether the error was harmless beyond a reasonable doubt. ***See Commonwealth v. Robinson***, 721 A.2d 344, 350 (Pa. 1998). An error is harmless where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Id***. When evidence is found to have been erroneously admitted in favor of the prosecution at a criminal trial, the Commonwealth bears the burden of proving harmless error. ***See Commonwealth v. Laich***, 777 A.2d 1057, 1062-63 (Pa. 2001).

Here, we note at the outset that the parties stipulated at trial that the photo's admissibility was not governed by Pa.R.E. 404(b). The Commonwealth, Appellant, and the trial court agreed that the photo did not come under the purview of that rule because Appellant's sexual contact with Z.T. was not wrongful or criminal conduct. *See* N.T. Trial, 7/6/2021, at 11; N.T. Trial, 7/12/2021, at 25. Accordingly, the trial court admitted the photo into evidence for reasons other than the permissible purposes enumerated in Rule 404(b)(2).

The Commonwealth, in its brief, also reiterates that Rule 404(b)(2) does not apply so as to make the photo admissible for any such purposes. It is therefore unnecessary for this Court to consider whether the subject photo was admissible under Rule 404(b).[6] Nor do we need to analyze the photo in the context of the inflammatory evidence standard, as Appellant does not raise that issue in his briefing.[7]

_____

[6] While Appellant now argues in his brief that the photo was evidence of another "act," under Rule 404(b)(1), making the photo inadmissible in the absence of an applicable permitted use under Rule 404(b)(2), he acknowledges that this new position is contrary to the one he took at trial. *See* Appellant's Brief, at 9. The argument is therefore waived for appellate purposes. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). It must be stressed here, though, that we offer no opinion on the correctness of the assumption undergirding the parties' stipulation at trial – that a "prior act" under Rule 404(b) must be wrongful or criminal conduct, as opposed to any prior act which is used to establish a defendant's bad character or criminal propensity.

[7] Appellant does not argue that the photo was inflammatory in his brief.

Since those standards of admissibility do not have to be addressed, the photo's admission is subject to the general test of relevance. The Commonwealth has advanced two alternative ways in which the photo was relevant. The first proposed basis is that the photo demonstrated Appellant's "sexual interest" in other men, tending to make D.M.'s allegation of being shown "gay pornography" more credible. We find this argument to be entirely unpersuasive.

D.M. claimed that Appellant once showed her a video of two men engaged in a sexual act, and the child described the video as "gay pornography." The Commonwealth charged Appellant with three offenses based on that allegation: corruption of minors; criminal use of a communication facility; and disseminating sexually explicit material to a child. *See* 18 Pa.C.S.A. § 6301(a)(1)(ii), 18 Pa.C.S.A. § 7512(a), and 18 Pa.C.S.A. § 5903(c)(1), respectively.

While the act of showing a child pornography on an electronic device would certainly establish material elements of those offenses, the Commonwealth's photo exhibit was simply not germane to any issues of material fact. It was not alleged that the victim was ever shown the subject photo. The photo was not even taken until after the alleged offenses were committed. Further, the undisputed fact that Appellant is bi-sexual did not make it any more or less likely that he committed the above offenses by

showing the child a pornographic video. The photo's depiction of Appellant in a sexual act with another man had no discernable bearing on D.M.'s veracity.

Even if Appellant's sexuality was somehow relevant, it was never in dispute such that documentation of it could assist the jury in deciding the existence of a material fact in this case. Appellant had admitted that he was bi-sexual, and he did not object to the admission of a "sex contract" in which he clearly expressed his desire for extramarital sexual relations with other men, including Z.T. The enlarged and full color photo of Appellant engaged in a sexual act with other consenting adults was not probative as to whether D.M. was shown a pornographic video of two men years before that photo was even taken.

The Commonwealth's alternative ground for the photo's relevance is difficult to describe in a cogent way. The argument seems to be that the photo rebutted the defense's theory that Phillips had a motive to testify falsely against Appellant. In his opening statement, defense counsel suggested that Phillips had lied about witnessing D.M.'s sexual abuse so that she could "carry on a relationship with [Z.T.]" N.T. Trial, 7/7/2021, at 41. The Commonwealth argues that the photo undercuts that claim because it proves Appellant had at all times consented to the sexual relationship between Phillips and Z.T.

It is evident from our review of the record that the Commonwealth has misconstrued both the defense's position and the import of the evidence the prosecution sought to have admitted in rebuttal. The photo now at issue was

created in March 2020, and Appellant has never disputed that both he and Phillips were sexually involved with Z.T. at that time. Phillips came forward to the police and implicated Appellant months after the photo was taken, in July 2020, which coincided with her decision to live with Z.T. and become sexually exclusive with him. The fact that Appellant was intimate with Z.T. at the time the photo was taken (in March 2020) was not at all inconsistent with the defense's theory about why Phillips *later* decided to testify against Appellant (in July 2020): that she wanted to be exclusive with Z.T. and therefore changed her story to rid them of Appellant. If in fact Phillips wanted to be exclusive with Z.T. as of July 2020, an earlier photo showing the three of them would not corroborate Appellant's later consent to an exclusive relationship between Phillips and Z.T., as apparently argued by the Commonwealth.

In sum, the photo of Appellant performing oral sex on Z.T. was not probative of any material issue at trial, and the trial court erred in admitting it into evidence. Having found that the trial court erred in that regard, we must now determine whether the Commonwealth carried its burden of showing that the error was harmless beyond a reasonable doubt.

The Commonwealth argues first that any potential prejudice caused by the photo's admission was cured by the trial court's instructions that the jury could only consider the photo when evaluating D.M.'s veracity and considering the nature of Appellant's relationship with Phillips and Z.T. **See** Appellee's

Brief, at 17-18; *see also* Appellee's Supplemental Brief, at 3-4.   The Commonwealth argues next that the prejudice caused by the photo was *de minimus* because it was cumulative of undisputed evidence that Appellant was bi-sexual, and the activity depicted in the photo was not a crime.   **See** Appellee's Supplemental Brief, at 3-4.

As an alternative ground, the Commonwealth contends that, even if the photo was not harmless, it could have only been prejudicial as to Counts 7, 8, and 10 (corruption of minors, criminal use of a communication facility, and disseminating explicit sexual material to a minor, respectively).   Accordingly, the Commonwealth argues alternatively, that the judgment of sentence should be affirmed as to the remaining charges, Counts 1, 2, 3, 4, 5, 6, 9, 11, and 12.  **See id**., at 5.[8]

We find that the Commonwealth has not shown that the photo's admission was harmless beyond a reasonable doubt.  First, it was improperly used to bolster the credibility of the victim.  The Commonwealth alleged that Appellant showed D.M. a pornographic video of two men on his phone, and

---

[8] These remaining counts were as follows:  Count 1 - Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. § 3123(b); Count 2 - Unlawful Contact with a Minor, 18 Pa.C.S.A. § 6318(a)(1); Counts 3 and 4 - Aggravated Indecent Assault, 18 Pa.C.S.A. §  3125(a)(7); Count 5 - Indecent Assault, 18 Pa.C.S.A. § 3126(a)(7); Count 6 - Endangering Welfare of Children, 18 Pa.C.S.A. § 4304(a); Count 9 – Indecent Assault,  18 Pa.C.S.A. § 3126(a)(7); Count 11 – Indecent Assault, 18 Pa.C.S.A. § 3126(a)(8); and Count 12 – Indecent Assault Without Consent, 18 Pa.C.S.A. § 3126(a)(1).

the jury was instructed that the photo, Exhibit 4, could be considered "with respect to the issue that relates to the alleged incident showing [the victim] gay porn." N.T. Trial, 7/8/2021, at 57. The jury is presumed to have followed that instruction, *see Commonwealth v. Gease*, 696 A.2d 130, 135 (Pa. 1997), making it difficult to see how the jury could have relied on only relevant evidence when entering its verdict.

In cases like this one, where there is no physical evidence of the charged crimes, and the credibility of an accuser is central to the prosecution's case, the question of harmless error often "poses a close call." *Commonwealth v. Roman-Rosa*, No. 111 MDA 2023, at 22 (Pa. Super. filed December 6, 2023) (unpublished memorandum). This is because "[t]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." *Id*. (quoting *Commonwealth v. McDonough*, 96 A.3d 1067, 1069 (Pa. Super. 2014)). Here, the trial court's cautionary instruction essentially advised the jury that the photo was evidence of the victim's veracity, causing substantial prejudice.

Second, the photo may have influenced the jury to find Phillips more credible, or to reject Appellant's explanation for her testimony. Appellant's only means of discrediting Phillips' allegations was to argue that her affair with Z.T. gave her a motive to lie. The jury was instructed that the photo was probative of the parties' relationship with Z.T. at the relevant times. This was

harmful to Appellant because, in reality, the timing of the photo's creation made it completely irrelevant on that point.

Third, the photo could have led the jury to consider Appellant's legal conduct as evidence of his guilt, or a propensity to commit the charged offenses. It was not a crime for Appellant to possess an explicit image of himself having sexual contact with another man. The Commonwealth had to prove, rather, that Appellant showed such material to a child, as this is the key element of disseminating explicit sexual material to a minor, *see* 42 Pa.C.S.A. § 5903, as well as corruption of minors, *see* 42 Pa.C.S.A. § 6301(a)(1)(ii). Carrying out these acts with the use of a cellular phone would in turn constitute criminal use of a communication facility under 42 Pa.C.S.A. § 7512.[9]

The Commonwealth has not established beyond a reasonable doubt that the jury avoided making an inference that Appellant showed the victim the type of material that he had lawfully possessed. That is, the jury could have

---

[9] An element of disseminating explicit sexual material to a child is that the material must be "obscene." Such material depicts nudity or sexual conduct; it may also refer to material that "appeals to the prurient interest" under "contemporary community standards." 42 Pa.C.S.A. § 5903(b)-(c). Similarly, conduct which corrupts a minor is an act which "would offend the common sense of community and the sense of decency, propriety and morality which most people entertain." *See Commonwealth v. Person*, 325 A.3d 823, 830 (Pa. Super. 2024) (quoting *Commonwealth v. Sebolka*, 205 A.3d 329, 339 (Pa. Super. 2019)). At Appellant's trial, the Commonwealth had the burden of proving the elements of these crimes beyond a reasonable doubt. The admission of Exhibit 4 could have aided the Commonwealth in doing so.

improperly inferred that Appellant's possession of home-made pornography on his phone made it more likely that he displayed similar material to the victim on the same device.[10]

Moreover, the photo was not merely cumulative of other evidence, as the Commonwealth claims. The content of the photo, while not argued as inflammatory or evidence of a criminal act, was nevertheless salacious. The photo was enlarged from a digital file and printed in color on an 8.5 by 11-inch piece of paper. This graphic and gratuitous display of Appellant's sex act portrayed him as no other evidence did, and in a manner that would have made it difficult, if not impossible, for the jury to forget. The emphasis placed on the photo by the Commonwealth and the trial court also increased the chance that the jury attached significance to this piece of irrelevant evidence when entering its verdict.

Finally, we address the Commonwealth's argument that any prejudicial error in admitting Exhibit 4 would be limited to only the three offenses which related to showing the minor victim pornography. This ground is unpersuasive because the photo was ostensibly admitted for purposes of corroboration in a

_____

[10] The jury was advised by the trial court not to consider the photo for any purposes other than those two which were specifically enumerated: "[Phillips'] relationship with [Z.T.,] as well as with respect to the issue that relates to the alleged incident showing gay porn." **See** N.T. Trial, 7/8/2021, at 57. These instructions were vague enough that the danger of a propensity inference remained. **See Commonwealth v. Yale**, 249 A.3d 1001, 1015 (Pa. 2021) (stressing that the impact of propensity evidence "against a defendant is significant and may be highly prejudicial[.]"

case where the jury's central function was to assess the credibility of the Commonwealth's witnesses. If Exhibit 4 indeed helped bolster the accounts of Phillips and D.M. as the Commonwealth intended, then the jury could have been more likely to accept as true their allegations as to the remaining charges. Again, all of Appellant's convictions hinged on the jury finding these witnesses credible, as there was no physical evidence that any of the alleged offenses ever took place. *See Roman-Rosa*, No. 111 MDA 2023, at 22; *see also McDonough*, 96 A.3d at 1069.

Thus, we conclude that the erroneous admission of the photo was not harmless. The error caused more than *de minimis* prejudice; the photo was not cumulative of any properly admitted evidence; and the properly admitted evidence of Appellant's guilt was not overwhelming. To remedy the trial court's error, the judgment of sentence must be vacated in its entirety so that Appellant may receive a new trial.

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/18/2025