J-A19010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
GREGORY BERNARD FIELDS  :
:
Appellant  :  No. 1559 WDA 2024

Appeal from the Judgment of Sentence Entered June 7, 2024
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s):  CP-37-CR-0000207-2023

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:  **FILED:  November 4, 2025**

Appellant, Gregory Bernard Fields, appeals from the judgment of sentence of five to ten years' incarceration, imposed after he was convicted of possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105(a)(1).  After careful review, we affirm.

At trial, the following testimony was presented.  First, Larry Black testified that he had known Appellant and Appellant's girlfriend, Stacy Rice, since 2022.  N.T. Trial (Day 2), 5/14/24, at 36.  He stated that on February 14, 2023, his son, David Black, called him and told him that Appellant and Ms. Rice were arguing.  *Id.* at 42-43.  Larry Black and the Commonwealth then had the following exchange:

> [Larry Black:] [David] … said [Appellant] and [Ms. Rice] were at his house having some kind of fit out front, yelling and screaming, stuff like that.  … And then he suddenly … said [Appellant] got his gun and he ducked down and hid.  And I heard the two gunshots over the phone and I just told him … I'm on my way, I'm almost

there. And then my son shut the phone off and I shut mine off and I tried to get in a hurry to get up there.

[The Commonwealth:] Okay. So you're on the phone with your son, … do you know approximately what time of day that call occurred?

[Larry Black:] It was early. Maybe around nine or ten, something like that. I'm not sure.

[The Commonwealth:] Okay. Right after that phone call, did you drive down?

[Larry Black:] Yeah, I was actually on my way while he was talking to me.

*Id.* at 43-44.

Larry Black testified that as he was driving on Route 422 to where his son was located, he passed Appellant's vehicle, a black Cadillac SUV, traveling in the opposite direction. *Id.* at 46-47. Larry Black made a U-turn and began following Appellant's car. *Id.* at 47. Because Route 422 was a highway, he was able to pull alongside Appellant's vehicle, which Appellant was driving. *Id.* at 47, 50. Larry Black testified that he began "flashing the lights" of his car, and "rolled [his] window down and waved…." *Id.* Larry Black explained that he was trying to get Appellant "to stop and talk" so he could "find out why [Appellant was] so mad." *Id.* at 49. However, at that point, Appellant "pulled out his gun, his pistol, [and] aimed it right at [Larry Black]…." *Id.* at 47. Larry Black testified that he had a shotgun in his vehicle, which he grabbed and raised. *Id.* He stated that he "shot [at Appellant's] rear tire, [but] missed his tire and hit the back of his car…." *Id.* Appellant "immediately … pulled his gun in and rolled his window up." *Id.* Larry Black was adamant

- 2 -

that Appellant had pulled his weapon first, with the firearm in Appellant's hand positioned outside the window of his vehicle and pointing "right at" Larry Black, before Larry Black shot at Appellant. *Id.* at 49. Larry Black also testified that he saw Ms. Rice in the vehicle with Appellant. *Id.* at 50.

After this incident, Larry Black "took off" and went home. *Id.* at 51. However, police later arrived at Larry Black's home and stated they were impounding his truck. *Id.* at 52. Larry Black resisted the officers and had to be tasered. *Id.* He was subsequently taken into custody and provided a statement to police. *Id.* at 53-54. Based upon Larry Black's shooting Appellant's car, he was charged with various offenses, and ultimately pled guilty to terroristic threats and reckless endangerment in exchange for a sentence of seven years' probation. *Id.* at 56-57. Larry Black stated that testifying in Appellant's case was not a condition of his plea agreement, and he had not been offered any "deals" for "a lighter sentence or plea offer in exchange for his testimony." *Id.* at 58. In fact, Larry Black stated that no one had even mentioned testifying against Appellant until after he was sentenced. *Id.*

As its second witness, the Commonwealth called Terry Boyles to the stand. Mr. Boyles testified that he worked for Love Heating and Cooling Company and was driving his work van on Route 422 on February 14, 2023. *Id.* at 91-92. He explained:

> [Mr. Boyles:] I was going west on 422 … [w]hen a vehicle come [*sic*] past me on my left, a dark vehicle, came up relatively fast, cut me off and then slowed way down, which I thought was kind

of -- I don't know what the word to use there, but in very poor taste. Because he cut me off. I had a semi on my tail. [I t]ried to slow down, then I thought well possibly he was trying to go onto [the] 376 bypass. That did not happen. So, as he's slowing down, I'm kind of watching him, [and] the truck on my tail. The second vehicle that I didn't see coming up, come [*sic*] flying up beside me on my left. Got beside that vehicle, then they both paced the same pace. They slowed down. ***That's when the vehicle in front of me, the gentleman stuck his arm out with a -- some type of a handgun, revolver, pistol,*** I don't know what. And then I heard the shot, the boom.

*Id.* at 92-93 (emphasis added). Mr. Boyles testified that after the two vehicles drove away, he saw a police officer, so he stopped and told the officer what had happened. *Id.* at 94.

When questioned more about the arm and hand holding the gun that he saw, Mr. Boyles explained that "it was definitely … dark skinned" and was "not female." *Id.* He also testified that the gun was "[s]ome type of a handgun…." *Id.* In regard to the shot he heard, Mr. Boyles testified that "[i]t was extremely loud[,]" and sounded louder than the noise a handgun would make. *Id.* Finally, Mr. Boyles stated that after the shot was fired, he "took a quick picture" of the vehicle in front of him, "hoping maybe [he] would see a license plate or something…." *Id.* at 97. The photograph taken by Mr. Boyles was admitted into evidence and shown to him. *Id.* He confirmed the hand holding the gun came out of the window of the vehicle shown in the picture. *Id.* at 99. Mr. Boyles also testified that he did not know Appellant, Ms. Rice, Larry Black, or David Black. *Id.* at 99.

Third, Ms. Rice testified for the Commonwealth. Ms. Rice stated that she had been in a romantic relationship with Appellant for almost three years.

*Id.* at 120. She stated that, at the time of trial, she was still in a relationship with Appellant and was in love with him. *Id.* at 122. Ms. Rice did not want to be testifying against Appellant at trial, and she was not there voluntarily; she had been subpoenaed to testify. *Id.* at 123. Ms. Rice admitted she was the passenger in Appellant's vehicle, which he was driving, during the encounter with Larry Black on February 14, 2023. *Id.* at 127. Ms. Rice was shown the picture taken by Mr. Boyles, and she confirmed that it was a photograph of Appellant's vehicle, which was a black Cadillac. *Id.* at 138. She testified that on the day of the incident, Larry Black came speeding up behind Appellant's vehicle "and opened fire." *Id.* at 127. Ms. Rice stated that Appellant then raised a gun, but claimed he did not fire it. *Id.* at 133.

Ms. Rice was then asked about the fact that, when she was questioned by police on the day of the incident, she told them that Appellant did not have a gun. *Id.* at 134. Ms. Rice testified that she lied to police that day because she did not want to get into trouble. *Id.* at 135. Ms. Rice was also asked about two meetings she had with the prosecutor and her probation officer after this incident, but before Appellant's trial, during which she had first stated that Appellant had fired his gun during this incident, but then claimed that Appellant had tried to fire his gun, but it had jammed. *Id.* at 135-37. Ms. Rice testified that she "could have been high" when she offered these inconsistent stories. *Id.* at 136. Nevertheless, she confirmed that in all her statements, except for the very first one to police on the day of the incident, she had correctly said that Appellant had a gun during the interaction with

- 5 -

Larry Black. *Id.* at 137. Ms. Rice also acknowledged that she was on probation at the time of Appellant's trial, but that she had not been offered anything in exchange for her testimony. *Id.*

At the close of Appellant's trial, the jury convicted him of the above-stated firearm offense. On June 7, 2024, he was sentenced to the term of incarceration set forth *supra*. Appellant filed a timely post-sentence motion, as well as a subsequent amendment thereto. However, the court did not rule on Appellant's post-sentence motion, and the clerk of court's did not deny it by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a)-(c) (providing that post-sentence motions not decided within the mandatory timeframe shall be denied by operation of law, with such order entered by the clerk of courts on behalf of the court). On December 17, 2024, Appellant filed a premature notice of appeal. Thereafter, at the direction of this Court, the clerk of courts entered an order denying Appellant's post-sentence motion by operation of law on October 3, 2025. Thus, we will treat Appellant's premature notice of appeal as having been filed on that date. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); *Commonwealth v. Cooper*, 27 A.3d 994, 1008 (Pa. 2011) (stating that a premature appeal should be treated "as if it had been filed after denial of the post-sentence motion in accordance with [Rule] 905(a)(5)"). Appellant and the court both complied with Pa.R.A.P. 1925.

Herein, Appellant states the following three issues for our review:

I)       Whether … Appellant is entitled to a judgement [*sic*] of acquittal in as much as he was convicted on insufficient evidence/sufficiency of the evidence: person not to possess, felony of the second degree, 18 Pa.C.S.[ §] 6105(a)(1)?

\*\*\*

II)      Whether the trial court committed a reversible error and an abuse of discretion when it allowed into evidence at trial[] hearsay testimony and/or prior bad acts evidence[,] which should have been deemed inadmissible, or in the alternative, whose prejudicial impact outweighed its probative value, as well as crucial testimony predicated on a leading question?

\*\*\*

III)     Whether the trial court committed prejudicial error and an abuse of discretion when it failed to award … Appellant a new trial [where] his verdict was against the weight of the evidence and "shocked the conscience"?

Appellant's Brief at 7-9 (unnecessary capitalization omitted).

## **Sufficiency of the Evidence**

Appellant first contends that the evidence was insufficient to sustain his conviction for possession of a firearm by a person prohibited. We begin by recognizing that,

> [w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine[,]
>
>> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of

- 7 -

innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021) (cleaned up).

Here, Appellant contends that the Commonwealth's evidence "was so convoluted and unbelievable that the only outcome now, in the interests of justice, would be a judgment of acquittal in his favor." Appellant's Brief at 22-23. Appellant argues that the Commonwealth's three main witnesses — Larry Black, Mr. Boyles, and Ms. Rice — were incredible and their testimony was wholly insufficient to sustain his conviction. First, he contends that Larry Black was the aggressor who fired first and was convicted of crimes related to this incident, yet Larry Black received only probation while Appellant received a lengthy term of imprisonment. Second, he contends that Mr. Boyles' testimony should not have been believed due to "the fast-paced nature of the incident" and the fact that he only saw the arm of the individual he claimed was holding a gun. *Id.* at 27. Third, Appellant argues that Ms. Rice's statements prior to trial, and her trial testimony, were "all over the place[,]" with Ms. Rice at one point claiming Appellant had no gun, then saying he did have a gun that "jammed" when he tried to fire it, and then testifying at trial

that he had a gun that he never tried to fire at all. *Id.* at 25-26. According to Appellant, the testimony of these three witnesses

> was so weak and inconclusive[] that it is apparent that he was convicted by a wayward jury, one consumed with prejudice and not one concerned with deciding whether the Commonwealth met its burden of proving that Appellant was guilty beyond a reasonable doubt on each and every element of the crime of possession of a firearm [by a person] prohibited….

*Id.* at 29 (unnecessary capitalization omitted).

Appellant's argument is meritless. First, attacks on credibility determinations are challenges to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (stating that "credibility determinations are made by the fact finder and that challenges thereto go to the weight, and not the sufficiency, of the evidence"). Moreover, the jury was tasked with assessing the credibility of these three witnesses, and it was free to believe all, part or none of their testimony. *See Rojas-Rolon*, 256 A.3d at 436. We disagree with Appellant that the testimony of these witnesses was so incredible, inconclusive, or weak as to render it insufficient to support the jury's verdict. Instead, we conclude that the testimony of these witnesses was amply sufficient, if believed by the jury — which clearly it was — to prove that Appellant possessed a firearm.

Specifically, Larry Black testified that Appellant had a firearm in his hand, which was positioned outside the window of his vehicle and pointed right at Larry Black. Mr. Boyles' testimony corroborated Larry Black's claims, as he stated that he saw a hand holding a firearm come through the driver's-side

window of the vehicle in front of his and point at the vehicle beside it. Mr. Boyles took a picture of the vehicle through which the hand holding the gun came, and it was later identified by Ms. Rice as Appellant's SUV. Ms. Rice testified that she was in the vehicle with Appellant that day, and he was driving. Although Ms. Rice told police on the day of the incident that Appellant did not have a gun, she explained at trial that she lied because she was scared, and that Appellant did have a gun. In each of her subsequent statements to the prosecutor, and in her testimony at trial, she stated that Appellant possessed a gun on the day of the incident. This testimony, taken as a whole and viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to prove that Appellant possessed a firearm. Therefore, his first claim challenging the sufficiency of the evidence is meritless.

**Admission of Evidence**

Next, Appellant challenges the court's admission of certain evidence, presenting several sub-claims which we will address in turn. Initially, however, we note that,

> [t]he standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

<em>Hearsay Testimony</em>

First, Appellant argues that the court erred by permitting Larry Black to testify about his telephone call with his son, David Black, because Larry Black's testimony that David told him during this call that Appellant "grabbed his gun, and that two shots were fired by [Appellant]" constituted inadmissible hearsay. Appellant's Brief at 30. According to Appellant, "the Commonwealth argued that this evidence was admissible [under the] present sense impression exception to the hearsay rule[,] as well as an 'excited utterance.'" *Id.* at 31. Appellant contends that the statements by Larry Black fit neither of these hearsay exceptions and, thus, they were improperly admitted by the trial court.

This Court has recently summarized:

> "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802 ([stating the] rule against hearsay). "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2)) (ellipses and quotation marks omitted). "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." *Commonwealth v. Busanet*, 54 A.3d 35, 68 (Pa. 2012).

> Under the present sense impression exception to the rule against hearsay, a "statement describing or explaining an event or condition, made while or immediately after the declarant

perceived it[,]" is admissible. Pa.R.E. 803(1); ***see also Croyle v. Smith***, 918 A.2d 142, 150 (Pa. Super. 2007) (stating [that] the present sense impression exception "permits testimony of declarations concerning conditions or events observed by the declarant regardless of whether the event was exciting[]") (citation omitted)[].

***Commonwealth v. King***, No. 608 WDA 2024, unpublished memorandum at *8-9 (Pa. Super. filed Mar. 21, 2025), *appeal denied*, No. 96 WAL 2025, 2025 WL 2600360 (Pa. Sept. 9, 2025) (emphasis omitted).[1]

In ***Commonwealth v. Hood***, 872 A.2d 175 (Pa. Super. 2005), we further explained that,

[t]he present sense impression exception, regardless of the availability of the declarant to testify at trial, allows the admission of a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. The observation must be made at the time of the event or shortly thereafter, making it unlikely that the declarant had the opportunity to form an intent to misstate his observation. Consequently, the trustworthiness of the statement depends on the timing of the declaration.

The rationale for this exception is that the relative immediacy of the declaration [e]nsures that there will have been little opportunity for reflection or calculated misstatement. In addition, the present sense impression does not require that the comments be made to another person also present at the scene, but may be made over the telephone.

***Id.*** at 183 (cleaned up). The ***Hood*** panel concluded that, under the present sense impression hearsay exception, the trial court had properly admitted recordings of two 911 calls made by individuals who had witnessed a shooting. ***Id.*** at 184. We noted that, although the callers in that case were unidentified,

_____

[1] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value.

- 12 -

their descriptions of the shooting "mirrored" testimony given by other eyewitnesses, which was sufficient "corroborative proof that [they had] actually viewed the event…." *Id.* at 184.

In the instant case, the Commonwealth maintains that,

[s]imilar to *Hood*, the declarant in this case, David Black, made statements to his father, Larry Black, over the telephone, simultaneously with his observation of [Appellant's] having a gun and firing it. David Black conveyed this to Larry Black over the phone and Larry Black also testified that he heard two gunshots over the phone. As the identity of the declarant was known, there was no need for independent corroboration that the declarant was observing what he described, but even if required, having heard the gunshots, Larry Black provided that corroboration.

Commonwealth's Brief at 13-14.

We agree. The statements by the declarant, David Black, fell within the present sense impression exception to the rule against hearsay, as explained in *Hood*. David Black's statements to Larry Black, over the telephone, described the event of Appellant's pulling a firearm and firing it, as David Black was perceiving it. Larry Black's hearing the gunshots that David Black was describing further corroborated the trustworthiness of David Black's statement of what he was seeing. Under the rationale of *Hood*, the court did not abuse its discretion in admitting Larry Black's testimony in this regard.

## *Prior Bad Acts Evidence*

Appellant also claims that Larry Black's testimony, that David Black said Appellant fired a gun, should have been precluded on the basis that it constituted evidence of Appellant's prior bad acts. According to Appellant, the Commonwealth failed to properly notify him that it planned to introduce this

- 13 -

evidence, and its prejudicial impact outweighed its probative value. We disagree.

First, Pennsylvania Rule of Evidence 404 addresses the introduction of prior bad acts evidence, as follows:

**(b) Other Crimes, Wrongs, or Acts.**

(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

(3) *Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or during trial if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and reasoning for the use of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

Here, Appellant first claims that the Commonwealth failed to provide him sufficient notice that it was introducing prior bad acts evidence through the testimony of Larry Black. Appellant's entire argument in support of this claim is that "[t]his evidence was … a surprise to Appellant and his trial counsel, and the Commonwealth failed to provide the required notice under [Rule] 404(b)(3)…." *See* Appellant's Brief at 31. Appellant's brief argument is insufficient to convince us that Rule 404(b)(3)'s notice requirement was not

- 14 -

met. As the Commonwealth points out, prior to trial, the defense received in discovery "the written statement of Larry Black[,] taken by the Union Township Police, … describing that [Appellant] had shot at his son David Black prior to the incident on Route 422." Commonwealth's Brief at 15-16. When objecting to the admission of this prior bad acts evidence at trial, defense counsel conceded that he was aware, prior to trial, of Larry Black's statement "that he had learned from David Black earlier [on the] day [of the incident] that [Appellant] had shot at him." N.T. Trial (Day 2) at 41. Thus, Appellant was aware, prior to trial, that the Commonwealth would likely introduce evidence that David Black had told Larry Black that Appellant had fired a gun at him on the morning of the incident.

It seems that what defense counsel was actually objecting to at trial, in terms of notice, was the fact that Larry Black was testifying that he **was on the phone** with David Black when this shooting happened, and that he had heard the shots himself. **See id.** (defense counsel's stating, "The issue is … [for] the first time, as we got closer to trial, I think yesterday, I was told that there was an excited utterance **on the phone**.") (emphasis added). However, the prosecutor responded that he had also not been told by Larry Black about the phone call until shortly before trial, and he had immediately conveyed that information to defense counsel. **Id.** at 42. Defense counsel agreed with the prosecutor's claim that the defense had been promptly notified of the phone call. **See id.** The prosecutor also stated that he was "not objecting to a continuance, if [defense counsel] pursued one, based on that information

- 15 -

coming to him." *Id.* The prosecutor additionally noted that a subpoena had been issued for David Black, but they were not able to locate him, as he "appear[ed] to be on the run" from "two active bench warrants out of Lawrence County." *Id.* After these remarks by the prosecutor, defense counsel simply stated, "I have no further comment[,]" and the court overruled his objections to the admission of Larry Black's testimony about David Black's statements on their phone call. *Id.* at 43.

Given this record, we conclude that Appellant has failed to demonstrate that the Commonwealth violated Rule 404(b)(3)'s notice requirement. Appellant was aware, well before trial, of Larry Black's statement to police in which he claimed that David Black told him that Appellant fired a gun in David's presence before the encounter between Larry Black and Appellant. Although it was not until shortly before trial, or even at trial, that Appellant discovered that Larry Black was **on the phone** with David when this first shooting occurred, the prosecutor immediately notified Appellant of that information when it was discovered. Moreover, defense counsel did not request a continuance, even though the Commonwealth stated it would not object to that request. Accordingly, Appellant has not proven that any relief is warranted on this claim.

We also discern no abuse of discretion in the court's admitting this prior bad acts evidence. Our Supreme Court has explained:

> [E]vidence of crimes, wrongs, or other bad acts "may be admissible as *res gestae* when relevant to furnish the complete story or context of events surrounding the crime."

- 16 -

> ***Commonwealth v. Weiss***, … 81 A.3d 767, 798 ([Pa.] 2013); ***see also Commonwealth v. Robinson***, … 864 A.2d 460, 496-97 ([Pa.] 2004) (holding that evidence of other bad acts is admissible where the particular crime or act was part of a chain, sequence, or natural development of events forming the history of a case); ***Commonwealth v. Williams***, … 896 A.2d 523, 539 ([Pa.] 2006) ("This Court has recognized exceptions to Rule 404, for which evidence of other crimes may be introduced, including the *res gestae* exception which allows 'the complete story' to be told.") (citing ***Commonwealth v. Paddy***, … 800 A.2d 294, 308 ([Pa.] 2002)).

***Commonwealth v. Crispell***, 193 A.3d 919, 936–37 (Pa. 2018).

Instantly, at trial, the Commonwealth contended that Larry Black's testimony that Appellant shot a gun in David Black's presence was admissible to provide "background and context as to why [Larry] Black pursued [Appellant's] vehicle, [and] why there was gunfire exchanged." N.T. Trial (Day 2) at 40. We agree. Notably, Appellant offers no meaningfully developed argument that this evidence was **not** admissible under the *res gestae* exception to the rule precluding prior bad acts evidence. Instead, he solely focuses on arguing that David Black's claim that he possessed a gun earlier on the day of the incident for which he was on trial was "clearly prejudicial and its prejudicial impact outweighed its probative value." Appellant's Brief at 37.

However, aside from repeatedly insisting this evidence was highly prejudicial, Appellant does not explain how that prejudice outweighed the necessity of the at-issue evidence to provide the context for the entire incident. Without Larry Black's testimony that David called him and said Appellant had a gun, after which Larry Black heard gunshots being fired over

- 17 -

the phone, the jury would have no context to understand why Larry Black pursued Appellant's vehicle in the manner he did, or why the two men would pull guns on each other. Thus, Larry Black's testimony that David told him Appellant fired a gun at or near him earlier on the day of the incident was highly probative in telling the story of the case. Appellant has failed to demonstrate that the prejudicial impact of that evidence outweighed this probative value.

### *Leading Question*

As the final sub-claim within his second issue, Appellant contends that the trial court abused its discretion by "failing to rule on trial counsel's objection to a leading question posed by the Commonwealth to Stacy Rice, … and the subsequent admission into evidence of damaging evidence which, *arguendo*, placed a gun in [Appellant's] hand during the incident with Larry Black on Route 422." Appellant's Brief at 38. Specifically, Appellant takes issue with the following portion of Ms. Rice's testimony:

> [The Commonwealth:] So, when [Larry Black] pulled up to the vehicle, did [Appellant] do anything?
>
> [Ms. Rice:] I'm not sure.
>
> [The Commonwealth:] [Ms.] Rice --
>
> [Ms. Rice] What?
>
> [The Commonwealth:] [Ms.] Rice --
>
> [Ms. Rice:] Yes.
>
> [The Commonwealth:] You swore to tell the truth, answer the question.
>
> [Ms. Rice:] He tried to protect us.

[The Commonwealth:] By doing what?

(No response.)

***[The Commonwealth:] Did he put a gun up, ma'am?***

***[Defense Counsel:] Leading.***

***[Ms. Rice:] Yes.***

[The Commonwealth:] And did you see him put the gun up?

[Ms. Rice:] Yes.

N.T. Trial (Day 2) at 128-29 (emphasis added).

Appellant claims that the court's failure "to rule on trial counsel's clear and obvious objection to the Commonwealth's leading question, the same designed to produce a damaging answer that was, *arguendo*, potentially the crux of their whole case (eyewitness testimony from the passenger in [Appellant's] car)[,]" constitutes reversible error. Appellant's Brief at 40.

We disagree. Initially, we note that although defense counsel stated, "Leading," when the court failed to acknowledge counsel's remark as an objection, or issue any ruling thereon, defense counsel remained mute as the witness answered and the Commonwealth continued its questioning. Defense counsel at no point reiterated his objection, pressed for a ruling from the court, requested Ms. Rice's testimony be stricken, sought a cautionary instruction, asked for a mistrial, or requested any other remedy. Instead, he simply acquiesced to the trial continuing.

Moreover, even if we considered the trial court's failure to rule on defense counsel's objection as effectively constituting a decision to overrule it, we would discern no abuse of discretion in that decision. ***See***

*Commonwealth v. Bibbs*, 970 A.2d 440, 453 (Pa. Super. 2009) ("The court's tolerance or intolerance for leading questions will not be reversed on appeal absent an abuse of discretion.") (citation omitted). Pennsylvania Rule of Evidence 611 permits leading questions "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Pa.R.E. 611(c)(2). "A witness may be treated as hostile by the party calling him where the testimony of the witness is unexpected, contradictory to earlier statements, and harmful to the party calling the witness, and where an injustice would result if the request to treat the witness as hostile is denied." *Bibbs*, 970 A.2d at 453 (citation omitted). In *Bibbs*, we found no abuse of discretion where the trial court allowed the Commonwealth to treat its witness as hostile and ask leading questions where the witness exhibited "overt unwillingness to testify" and showed "belligerence on the stand." *Id.* Here, the record is likewise sufficient to consider Ms. Rice a hostile witness, at least during the at-issue exchange. Ms. Rice, who had to be subpoenaed to testify and made it clear that she did not wish to be there, was being evasive and outright refusing to answer the prosecutor's questions. Given this record, we would discern no abuse of discretion in the court's permitting the Commonwealth to ask her leading questions. Thus, no relief is due on Appellant's claim that reversible error occurred when the court failed to rule on his objection.

**Weight of the Evidence**

In Appellant's third and final issue, he contends that the trial court erred by failing to grant his post-sentence motion for a new trial where the jury's verdict was contrary to the weight of the evidence. We have explained:

> A motion seeking a new trial based on the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Person*, 325 A.3d 823, 836 (Pa. Super. 2024), *appeal denied*, 334 A.3d 1283 (Pa. 2025) (cleaned up; some formatting altered).

Here, the trial court explained that

the jury properly considered all of the evidence in this case along with the arguments of counsel and reached the conclusion that [Appellant] was guilty of the charge of possession of a firearm by a person prohibited. In support of this conclusion, the court cites to the testimony of the three witnesses to the events of February 14, 2023, in which they all stated [Appellant] was in possession of a firearm. It was well within the purview of the jury to find said testimony to be credible in this case.

Trial Court Opinion, 2/18/25, at 17-18 (unnecessary capitalization omitted).

We discern no abuse of discretion in the court's decision. Herein, Appellant essentially reiterates the arguments raised in his preceding issues, claiming that the witnesses were incredible and improper evidence was introduced. He also asserts that "the Commonwealth went to extraordinary lengths to have Appellant, the sole victim, convicted at trial[,]" and that the verdict "shocks the conscience." Appellant's Brief at 48. For the reasons stated *supra*, we disagree that Appellant's previously-stated claims have merit. Moreover, nothing in the record supports his suggestion that the Commonwealth acted with inappropriate "zeal to prosecute Appellant…." ***Id.*** Instead, three witnesses — one of whom, Mr. Boyles, was wholly disinterested and uninvolved with any of the parties in this case — testified consistently as to what occurred on the day of the incident. Each of those witnesses' testimony placed a firearm in Appellant's hand. The jury was free to believe their testimony, and we cannot accept Appellant's request to substitute our judgment for that of the jury. ***See Commonwealth v. Watson***, 292 A.3d 562, 570 (Pa. Super. 2023) ("[I]t is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The

weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.") (citation omitted). Accordingly, the trial court did not abuse its discretion in denying Appellant's post-sentence motion for a new trial based on his challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/4/2025