J-S38036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHAROD S. HILL | : | |
| | : | |
| Appellant | : | No. 297 EDA 2025 |

Appeal from the Judgment of Sentence Entered October 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005405-2022

BEFORE:  McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 16, 2025**

Appellant, Charod S. Hill, appeals *nunc pro tunc* from the aggregate judgment of sentence of 10 to 20 years' incarceration, followed by 10 years' probation, imposed after he was convicted of committing various sexual offenses against his sister, beginning when she was nine years old.  On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain his convictions, as well as the discretionary aspects of his sentence.  After careful review, we affirm.

The trial court summarized the evidence presented at Appellant's trial, as follows:

1. Testimony of [Z].F.[1]

_____

[1] The trial court and Appellant both inexplicably refer to the victim with the initials, "N.F."  However, our review of the record indicates that the victim's
*(Footnote Continued Next Page)*

A. [Appellant] Sexually Assaulted [Z].F. [i]n Philadelphia and North Carolina

From birth until 2017, [Z].F. lived in Philadelphia with her mother[, E.F.,] … brothers[,] and Godmother. Around 2011, when [Z].F. was nine years old, her brother, [Appellant,[2]] an adult at the time, began touching [Z].F. sexually. [Appellant's] sexual contact with [Z].F. began at the family home on E[.] Street and continued when they moved to B[.] Street. [Appellant] also sexually assaulted [Z].F. during a visit to the home [E.F.] lived at with [Z].F. in North Carolina.

[Appellant's] sexual contact with [Z].F. progressed to sexual assaults that occurred several times at the Philadelphia residences when [Z].F. was nine years old. [Appellant] touched [Z].F. sexually more than once in the living room, [E.F.'s] bedroom, [Z].F.'s bedroom, the bathroom, and in the basement of the Philadelphia residences. When others were home, [Appellant] would signal to [Z].F. to get her attention to come to another part of the house where [Appellant] would touch [Z].F. sexually. More than once, [Appellant] touch[ed] [Z].F.'s breasts and the inside and outside of [Z].F.'s vagina with his hands, mouth, and penis[,] as well as by inserting his penis inside [Z].F.'s mouth.

When [Z].F. was nine or ten years old[,] she was downstairs at the Eastburn Street home watching TV. [Appellant] signaled to [Z].F. to come upstairs. She ignored him at first until he signaled again. At trial[, Z].F. testified that "I didn't want to go up there and I already knew what was going to happen." [Appellant] often signaled to [Z].F. to come upstairs to sexually assault [Z].F. [Z].F. said "it happened a lot before."

On this occasion, [Z].F. went upstairs into [E.F.'s] bedroom. [Appellant] entered behind [Z].F. and locked the door. [Appellant] pushed [Z].F. by her shoulder onto her knees. [Appellant] then inserted his penis into [Z].F.'s mouth and placed his hand on [Z].F.'s head and moved it back and forth. [Appellant] then told [Z].F. to lie on the floor. While [Z].F. was lying on the floor, [Appellant] inserted his penis into her vagina. [Z].F.

_____

initials are "Z.F." **See** N.T. Trial, 7/19/23, at 5 (the victim's stating her name at the outset of her direct testimony). Accordingly, we utilize "Z.F." herein.

[2] As is explained, *infra*, E.F. is the foster mother of both Appellant and Z.F. It does not appear from the record that Appellant and Z.F. are biological siblings.

testified that this time, like other times when he would insert his penis into her vagina, her body would tense up and [Appellant] would stop after a minute.

[Z].F. described other incidents of [Appellant's] sexual assaults at the Eastburn Street home when [Z].F. was about ten or eleven years [old]. While [Z].F. was showering, [Appellant] entered the bathroom and touched [Z].F.'s breast and vagina with his hand. [Z].F. also recalled a time when [Appellant] entered [Z].F.'s bedroom[. Appellant] lifted [Z].F.'s shirt up and began to masturbate. [Appellant] then inserted his penis into [Z].F.['s] mouth and put his semen in her mouth.

[Appellant's] sexual assaults of [Z].F. continued when the family moved to the Bouvier Street residence. [Z].F. recalled an incident while she was in her bedroom on her tablet, [Appellant] entered her bedroom and made [Z].F. perform oral sex on him by inserting his penis into her mouth. [Appellant] also inserted his fingers inside [Z].F.'s vagina and performed oral sex on [Z].F. by putting his mouth on her vagina. [Appellant] told [Z].F. that they had sex and never to tell anyone because they could get into trouble.

[Z].F. testified that during the sexual assaults[,] she was upset with herself and felt disgusted, uncomfortable[,] and scared. [Z].F. would try to make the sexual assaults end by not showering because "no one wants to touch me if I smell, so I just thought it would stop if I smelled.["] In 2017, [Z].F. moved to North Carolina with her mother, two brothers, her sister[,] … her sister's boyfriend, and her nephew. During a visit to North Carolina, when [Z].F. was about twelve or thirteen years old, [Appellant] touched [Z].F. sexually on her breasts and forced [Z].F. to have vaginal intercourse.

B. [Z.F.[3]] Discloses [t]he Sexual Assaults by [Appellant]

Around February 2022, several months after [Appellant's] visit to North Carolina, [Z].F. disclosed the history of sexual assaults by [Appellant] to her sister-in-law Kimberly Pritchett.[1] [Z].F. trusted Pritchett. [Z].F. wanted to tell someone about her feelings. [Appellant's] sexual assaults affected [Z].F.'s relationships with her other brothers. [Z].F. was uncomfortable around male teachers at school. After telling Pritchett, [Z].F. spoke to her

_____

[3] We note that, here, the trial court inexplicably refers to the victim as "G.P.," which appears to be a typo.

brother Andre by phone. Following her phone call with Andre, [Z].F. disclosed the sexual assaults to [E.F.] and [Z].F.'s sister[,] Ashley. After [Z].F. disclosed the sexual assault to her mother, [Z].F. provided statements to the Special Victims' Unit ("SVU") in North Carolina and sat for a recorded interview with a child advocacy center in North Carolina.

[1] Kimberly Pritchett is married to [Z].F.'s brother[,] Andre. Pritchett was residing in Philadelphia at the time [Z].F. disclosed to her the history of [Appellant's] sexual assaults.

C. Cross-examination [o]f [Z].F. [a]t Trial

During cross-examination, [Z].F. confirmed that [Appellant] sexually assaulted her several times while she resided in Philadelphia. [Z].F. also confirmed that the assaults … occurred when other people were home in the residences. [Appellant] would signal to [Z].F. to get her to meet him in another, unoccupied room of the residence where the sexual assaults would occur. [Z].F. further disclosed another incident of sexual assaults by [Appellant] that occurred at the apartment [Appellant] shared with his wife [at that time], Natasha Winfield, on a day [Appellant] drove [Z].F. to the nail salon. [Z].F. has a close relationship with Winfield. [Z].F. speaks to her by phone and Winfield has visited [Z].F. in North Carolina. [Z].F. was aware that [Appellant] and Winfield had divorced and recently became aware of a custody dispute between [Appellant] and Winfield. [Z].F. and Winfield have never discussed the custody matter.

2. Testimony of [Z].F.'s Mother, [E.F.]

[E.F.] was [Appellant's] foster mother since he was seven years old and was [Z].F.['s] foster mother since immediately after her birth. [E.F.] eventually adopted [Z].F. and [Appellant]. Along with [Z].F. and [Appellant], [E.F.] has six other children[;] one of her children, Aaron, passed away three years prior. [E.F.] recalled that her family was very close and described [Z].F. and [Appellant] as having a typical brother and sister relationship. [E.F.] and [Z].F. moved to North Carolina in 2017. When [Z].F. was 16 years old, she told [E.F.] that [Appellant] had been touching her sexually since she was nine or ten years old. [Z].F. was anxious and shaking as she recounted to [E.F.] the details of [Appellant's] sexual assaults.

[E.F.] contacted the police in North Carolina and provided a statement to police the day after [Z].F. disclosed to her the sexual

assaults by [Appellant]. The following day after reporting the sexual assaults to the police, [Z].F. was examined by a doctor. [E.F.] also provided a statement to the SVU in Philadelphia. [E.F.'s] statement and her testimony at trial were that[,] although she never observed [Z].F. act scared around [Appellant], when [Appellant] was around[, Z].F. would leave the family group and go to her bedroom.

3. Testimony of Police Office[r] Toni Madgey

Police Officer Toni Madgey has been assigned to the SVU of the Philadelphia Police Department for the past eight years. Officer Madgey was assigned to investigate [Z].F.'s case after receiving a report from the Department of Human Service ("DHS"). Officer Madgey conducted interviews with [E.F.] and Winfield. [Z].F. was interviewed by a child advocacy center in North Carolina. [E.F.] was interviewed by the SVU in Philadelphia by phone. Winfield provided a statement to Officer Madgey in person at the SVU in Philadelphia. [Z].F.'s interview with the child advocacy center was played during Officer Madgey's testimony.

4. Testimony Presented by [Appellant a]t Trial

[Appellant] testified at trial. [Appellant] was 16 years old when [Z].F. was adopted by [E.F. Appellant] asserted that [Z].F.'s claims of sexual assault were conceived only to thwart his custody case with Winfield. [Appellant] denied that he ever inappropriately touched [Z].F. Testimony of [Appellant's] good character — that he has a reputation in the community of being peaceful and law abiding — was admitted into evidence by stipulation of counsel.

Trial Court Opinion (TCO), 5/9/24, at 1-6 (one footnote and citations to the record omitted).

Based on this evidence, a jury convicted Appellant on July 20, 2023, of involuntary deviate sexual intercourse with a child (18 Pa.C.S. § 3123(b)), rape of a child (18 Pa.C.S. § 3121(c)), aggravated indecent assault of a child less than 13 years old (18 Pa.C.S. § 3125(a)(7)), unlawful contact with a minor (18 Pa.C.S. § 6318(a)(1)), and endangering the welfare of a child

(EWOC) (18 Pa.C.S. § 4304(a)(1)). On October 27, 2023, the trial court sentenced Appellant to the aggregate term of incarceration set forth *supra*.

Appellant filed a timely post-sentence motion, seeking reconsideration of his sentence and averring that the jury's verdict was contrary to the weight of the evidence. On March 6, 2024, the clerk of courts entered an order denying Appellant's post-sentence motion by operation of law. ***See*** Pa.R.Crim.P. 720(B)(3)(c). Appellant did not file an appeal.

However, on October 18, 2024, Appellant filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, seeking the reinstatement of his appellate rights *nunc pro tunc*. The court granted that petition and reinstated Appellant's direct appeal rights on January 24, 2025. Appellant filed a *nunc pro tunc* notice of appeal on January 27, 2025. He and the trial court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states three issues for our review:

> 1. Whether the evidence at trial was insufficient to convict [Appellant] of rape of child, unlawful contact with a minor, involuntary deviate sexual intercourse with a child, aggravated indecent assault of a child less than 13 years[]old, and [EWOC]?
>
> 2. Whether [Appellant's] convictions were against the weight of the evidence presented at trial?
>
> 3. Whether the trial court abused its discretion by imposing a manifestly excessive sentence?

Appellant's Brief at 10.

Appellant first argues that the evidence was insufficient to sustain his convictions. Aside from setting forth this Court's standard of review, his entire argument in support of this issue consists of the following:

All of the alleged incidents described by [Z].F. occurred when she was 7 years of age. Yet, during her interview with the police, she claimed it started when she was 10. And she did not come forward with these allegations until she was approximately 17 years of age, 10 years later.

Even better, [s]he testified at trial [that] … Appellant did not really start the bad things against her until she was 10, but at the Preliminary Hearing, she said that he used his penis the first time that he was sexually assaulting her — which puts her at 7. Also, [Z.F.] initially gave a statement that the abuses occurred in [three] separate homes, yet at trial, she changed her answer to [four].

With regard to the testimony of her mother, she acknowledged that her daughter never said that she was afraid of Appellant or did not want to be around him.

*Id.* at 22 (citations to the record omitted).

Appellant's argument is not sufficiently developed to enable us to meaningfully review his claims. Appellant does not discuss how the evidence was insufficient to prove any specific element(s) of the offenses for which he was convicted. He also does not cite or discuss any legal authority to support his argument. It is well-settled that,

[w]hen briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Citations to authorities must articulate the principles for which they are cited.

This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief

- 7 -

impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted). Because Appellant's argument is undeveloped and not supported by any legal authority, we deem it waived.[4]

Moreover, Appellant's argument seems to be that the evidence was insufficient to sustain any of his convictions because Z.F.'s testimony was not credible. However, attacks on credibility determinations are challenges to the weight, not sufficiency, of the evidence. ***See Commonwealth v. Gaskins***, 692 A.2d 224, 227 (Pa. Super. 1997). We will not review a sufficiency claim where the argument in support thereof goes to the weight, not the sufficiency, of the evidence. ***See Commonwealth v. Sherwood***, 982 A.2d 483, 492 (Pa.

---

[4] We also would deem Appellant's sufficiency issue waived because he did not identify, in his Rule 1925(b) statement, which element(s) of his multiple offenses were unproven by the Commonwealth. ***See*** Rule 1925(b) Statement, 3/6/25, at 1-2. This Court has

> repeatedly held that in order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Therefore, when an appellant's 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient, the sufficiency issue is waived on appeal.

> Such specificity is of particular importance in cases where the appellant was convicted of multiple crimes, each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

***Commonwealth v. Rivera***, 238 A.3d 482, 496 (Pa. Super. 2020) (cleaned up).

2009) (citing **_Commonwealth v. Small_**, 741 A.2d 666, 672 (Pa. 1999) (stating appellate court will not review sufficiency claim where argument in support of claim goes to weight, not sufficiency, of the evidence); **_Commonwealth v. Mack_**, 850 A.2d. 690, 693 (Pa. Super. 2004) (providing no relief where appellant alleged sufficiency but argued weight; weight issue was reserved for fact-finder below)). Therefore, we would not review Appellant's sufficiency issue on this basis, as well.[5]

Next, Appellant argues that the jury's verdict was contrary to the weight of the evidence. After review, we must conclude that this issue is also waived. We have explained:

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; **_Commonwealth v. Priest_**, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. **_Commonwealth v. Sherwood_**[], … 982 A.2d 483, 494 ([Pa.] 2009).
>
> **_Commonwealth v. Thompson_**, 93 A.3d 478, 490 (Pa. Super. 2014) (quoting **_Commonwealth v. Lofton_**, 57 A.3d 1270, 1273 (Pa. Super. 2012)).
>
> A boiler[]plate motion, either that "the evidence was insufficient to support the verdict," or that "the verdict was against the weight of the evidence," is not a "precise statement of issues and grounds relied upon." Such assignments of error not only do not "foster" but discourage

---

[5] In any event, we would agree with the trial court that the evidence was sufficient to support each of Appellant's convictions for the reasons set forth in its opinion. **_See_** TCO at 6-9.

> "alert and zealous advocacy," for anyone may make them without giving thought to what the issues really are.

*Commonwealth v. Holmes*, … 461 A.2d 1268, 1269 ([Pa. Super.] 1983) (*en banc*). Thus, this Court held that

> a post-verdict motion, either that "the evidence was insufficient to support the verdict," or that "the verdict was against the weight of the evidence," will preserve **no** issue for appellate review unless the motion goes on to specify **in what respect** the evidence was insufficient, or **why** the verdict was against the weight of the evidence.

*Id.* … (emphasis in original).

*Rivera*, 238 A.3d at 497.

Here, in Appellant's post-sentence motion, he simply stated: "[Appellant] alleges that the verdict of guilty on all offenses was against the weight of the evidence." Motion, 11/6/23, at 2 (unnumbered). Because Appellant failed to offer any explanation to support this bald assertion, he has failed to preserve his weight claim for our review.[6]

_____

[6] Notwithstanding waiver, we would conclude that no relief is due on Appellant's weight claim. Appellant repeats the exact same argument set forth in his sufficiency challenge, contending that Z.F.'s testimony was not credible and, thus, the jury's verdict was contrary to the weight of the evidence. *See* Appellant's Brief at 24-25. In rejecting Appellant's weight challenge, the trial court reasoned:

> Even though [Appellant] testified at trial, the jury discredited his testimony[, as evidenced by] the verdict. Further, the trial court does not believe [Appellant's] testimony outweighs the compelling and credible testimony of [Z].F. and the other corroborating evidence. In light of the overwhelming evidence of [Appellant's] guilt discussed above, [*see* TCO] at 1-5 [(discussing the sufficiency of the evidence to support each of Appellant's convictions)], the verdict is not contrary to the evidence and does not shock one's sense of justice.

*(Footnote Continued Next Page)*

Finally, Appellant challenges his sentence. Specifically, he contends that the court did not consider the protection of the public, the gravity of his offenses, and his rehabilitative needs, as required by 42 Pa.C.S. § 9721(b), when fashioning his sentence. Appellant also argues that the court ignored mitigating circumstances in this case, such as his age, lack of a criminal history, strong family and community ties, and "dysfunctional upbringing…." Appellant's Brief at 29, 30.

Appellant's claims implicate the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four[-]part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence

_____

TCO at 10. Appellant's cursory argument on appeal that Z.F. was not credible would not convince us that the trial court abused its discretion in denying his claim that the jury's verdict was contrary to the weight of the evidence. **See Commonwealth v. Person**, 325 A.3d 823, 836 (Pa. Super. 2024), *appeal denied*, 334 A.3d 1283 (Pa. 2025) ("Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence."). Accordingly, no relief would be warranted, even had Appellant's second issue been properly preserved.

> appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006)…. Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003)….
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Instantly, Appellant has failed to present a Rule 2119(f) statement in his appellate brief, and the Commonwealth has objected to that omission. ***See*** Commonwealth's Brief at 15. Where an appellant has not included a Rule 2119(f) statement and the appellee objects, "this Court is precluded from reviewing the merits of the claim and the appeal must be denied." ***Commonwealth v. Perzel***, 291 A.3d 38, 49-50 (Pa. Super. 2023), *appeal denied*, 301 A.3d 426 (Pa. 2023) (quoting ***Commonwealth v. Kiesel***, 854 A.2d 530, 532-33 (Pa. Super. 2004) (citing, *inter alia*, ***Commonwealth v.***

***Tuladziecki***, 522 A.2d 17, 19 (Pa. 1987)).  Accordingly, we cannot review

Appellant's sentencing challenge.[7]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025

_____

[7] Nevertheless, even had Appellant properly raised and preserved his sentencing claims for our review, we would conclude that he has not demonstrated that relief is warranted.  As the trial court points out, it had the benefit of a pre-sentence report.  ***See*** TCO at 11.  Thus, we "presume[] that the court [was] aware of all appropriate sentencing factors and considerations…."  ***Commonwealth v. Bullock***, 170 A.3d 1109, 1126 (Pa. Super. 2017) (citation omitted).  Moreover, the court took into account a mental health evaluation of Appellant, considered testimony by his family members, and "observe[d Appellant] during the trial and sentencing hearings…."  TCO at 11.  "The trial court also considered the victim's statement, the statement of [E.F.]…, and the particular factual circumstances of this crime, *i.e.*, that [Appellant] sexually assaulted the victim, his sister, for several years starting when she was [nine] years old."  ***Id.*** (citations to the record omitted).  Given this record, and the factors taken into account by the court, we would conclude that Appellant has not demonstrated that it abused its ample sentencing discretion, even had he preserved this issue for our review.  ***See Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006) ("Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.").

- 13 -